694 A.2d 1169

**Francis SPINO and Louise Spino, h/w, Appellants,**

v.

**JOHN S. TILLEY LADDER COMPANY, and
M.A. Buten and Son, Inc., Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 27, 1997.

Decided June 17, 1997.

288

Francis X. Nolan, Gerald A. McHugh, Donald E. Matusow, Philadelphia, for Francis and Louise Spino.

Terry S. Hyman, Harrisburg, for Amicus– Pa. Trial Lawyers Assoc.

Arthur M. Toensmeier, J. Michael Doyle, Philadelphia, for John S. Tilley Ladder Co.

James M. Beck, Philadelphia, for Amicus–Product Liability.

Andrew F. Susko, Philadelphia, for Amicus–Pa. Defense Institute.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## *OPINION*

NIGRO, Justice.

The issue before this Court is whether the trial court erred when it admitted "lack of prior claims" evidence. We conclude the Superior Court properly affirmed the trial court's decision to admit such evidence, and therefore, we affirm.

Appellants, Francis and Louise Spino ("the Spinos") purchased a type 3 ordinary household ladder in 1986 from a paint store. The ladder was manufactured by Appellee John S. Tilley Ladder Company ("Tilley") and was designed to accommodate ordinary household use restricted to a 200 pound weight bearing load.[1] Francis Spino testified that he purchased the ladder for a painting project and later used the ladder for household projects. Louise Spino testified that she used the ladder two or three times a year to wash windows or hang curtains.

In November 1986, Louise Spino brought the ladder into her kitchen, placed a bucket of water on the ladder shelf and climbed the ladder. At trial, Mrs. Spino testified that while she reached her arm up in an attempt to clean the kitchen

---

1. Appellants do not dispute the fact that Francis Spino weighed 200 pounds at the time the ladder was purchased.

ceiling, she heard a cracking sound, the ladder shook, and the next thing she remembers she was on the floor. Mrs. Spino was then taken to the emergency room and underwent hospitalization and surgery to repair a fractured tibia and fibula.[2] As a result, the Spinos instituted a product liability action against Appellees for Louise Spino's injuries and Francis Spino's loss of consortium. It was their assertion that the ladder leg cracked since it lacked an anti-split device. The Spinos initially asserted two theories of liability, common law negligence and strict liability pursuant to § 402A, Restatement (Second) of Torts. At the outset of trial, Appellants dismissed M.A. Buten and Son, Inc. from the case and abandoned any negligence claims, proceeding against Tilley on strict liability.

Prior to trial, the Spinos filed a Motion in Limine seeking preclusion of the admission of evidence provided by Tilley's President, Robert Howland. Mr. Howland was expected to testify that there had been no similar accidents or claims with respect to this particular product in his thirty years of employment with the company and neither he, nor anyone at the company, had ever been informed of a failure similar to the one alleged by the Spinos. The Spinos maintained that allowing such evidence impermissibly injected negligence principles into a § 402A strict liability products liability action, and therefore, it is *per se* inadmissible. In response, Tilley maintained that the evidence was relevant to prove that the ladder had not failed as alleged and was not intended to prove that Tilley had been free of negligence in continuing to manufacture and market the type 3 ladder without providing an anti-split device.

The trial court denied the motion, finding that since this was a product design case, Mr. Howland's testimony constituted relevant rebuttal evidence to the Spinos' claim that the alleged defect was common to all type 3 household ladders manufactured by Tilley. Moreover, the trial court noted that "a

2. Emergency room records note that Mrs. Spino lost her balance and fell four feet. Further, while still hospitalized, Mrs. Spino told her husband that she did not know how the accident happened.

sufficient proffer was made during the course of trial, in camera, to satisfy the Court of the reliability of Mr. Howland's testimony." (Trial Court Opinion dated 12/5/94, p. 13).[3] After an in camera review, the trial judge found that Tilley maintained a chronological log of reported claims covering Tilley's ladder products, including the type 3 ladder. The court was satisfied that the log was an authentic business record and was "comprehensive in its recording of all reports and claims of problems which the Company had received from any source."[4] *Id.* None of the log entries reported a leg split of a type 3 ladder.[5]

At trial, the parties presented conflicting expert testimony. The Spinos' expert maintained that a split in the ladder leg occurring at the time of the accident caused the injuries, and further, the ladder's design was defective in its failure to include an anti-split device of the type found on Tilley's commercial and construction ladders. Furthermore, their expert testified that the lack of the anti-split device in the design of Tilley's type 3 household ladder rendered the ladder unsafe for its intended use. In contrast, Tilley's expert witness testified that the type 3 household ladder was not defectively designed, and based upon his examination of the same ladder, the crack in the ladder leg had occurred at some time prior to the accident.

At the conclusion of a three-day trial before the Honorable John W. Herron, the jury returned a verdict in favor of Tilley,

3. In footnote 8, the trial court emphasized it may have improperly focused on the veracity of the "no prior claims" evidence rather than the threshold evidentiary inquiry regarding reliability.

4. In footnote 9 on page 13 of its opinion, the trial court recalled being impressed that Tilley's log was very extensive when viewed in its entirety. Further, the trial court indicated that the Spinos' counsel had the same opportunity to view the log and never expressed any objection or reservation that the log failed to accurately reflect all reports or claims received by Tilley.

5. Additionally, the trial court found the Spinos "passed" on Tilley's proffer of a witness to elaborate on the log entries. As a result, the Spinos waived any objection they may have asserted regarding the reliability of the company log. *Id.* at p. 14–15, citing *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

finding there was no defect in the ladder which made it unsafe for its intended use. Following the verdict, the Spinos filed a Motion for Post–Trial Relief which the trial court denied. On appeal, the Superior Court affirmed, finding that Howland's "no prior claims" evidence was relevant as to the issue of causation and the trial judge properly admitted such testimony. *Spino v. John S. Tilley Ladder Company*, 448 Pa.Super. 327, 671 A.2d 726 (1996). This Court granted the Spinos' Petition for Allowance of Appeal limited to the issue of whether the trial court erroneously allowed Tilley to introduce the "no prior claims" evidence of leg splitting.

■■■ Instantly, the Spinos argue that admission of the no prior claims testimony improperly injected negligence issues of due care into a strict liability action, warranting the award of a new trial.[6] Further, they argue that this Court should adopt a *per se* rule whereby absence of prior claims evidence is inadmissible in § 402A actions. In opposition, Tilley argues the lack of prior claims evidence should not be *per se* inadmissible as it is relevant to rebut evidence of causation. Tilley maintains that Mr. Howland's testimony was offered solely to rebut the Spinos evidence as to causation and was admissible for that purpose.

■■■ Evidence of due care by a defendant is both irrelevant and inadmissible in a products liability case since a manufacturer may be strictly liable even if it used the utmost care. *see Lewis v. Coffing Hoist Division, Duff–Norton Co., Inc.,* 515 Pa. 334, 528 A.2d 590 (1987)(industry standards and practices are inadmissible in strict liability actions because they improperly inject negligence principles); *Majdic v. Cincinnati Machine Company,* 370 Pa.Super. 611, 537 A.2d 334 (1988). However, while evidence can be found inadmissible for one purpose, it may be admissible for another. *Bialek v.*

**6.** The "[g]rant or refusal of a new trial will not be reversed in appeal, absent an abuse of discretion or error of law which controlled the outcome of the case." *Gouse v. Cassel,* 532 Pa. 197, 615 A.2d 331 (1992). Further, as with any question of law, this Court's scope of review is plenary. *See Phillips v. A–Best Products Co.,* 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995).

*Pittsburgh Brewing Company,* 430 Pa. 176, 185, 242 A.2d 231, 235 (1968).[7]

■ It is well-established that the concept of strict liability allows a plaintiff to recover where a product in "a defective condition unreasonably dangerous to the consumer or user" causes harm to the plaintiff. § 402(A), Restatement (Second) of Torts; *see also Webb v. Zern,* 422 Pa. 424, 427, 220 A.2d 853, 854 (1966). Pennsylvania law requires that a plaintiff prove two elements in a product liability action: that the product was defective, and that the defect was a substantial factor in causing the injury. *Berkebile v. Brantly,* 462 Pa. 83, 337 A.2d 893 (1975). Specifically, in a design defect case, the question is whether the product should have been designed more safely. *Dambacher by Dambacher v. Mallis,* 336 Pa.Super. 22, 485 A.2d 408 (1984), *appeal denied* 508 Pa. 643, 500 A.2d 428 (1985).

In a plaintiff's case-in-chief in a product liability action, our appellate courts have analyzed the admissibility of prior accidents testimony and have found such evidence relevant and admissible. In *DiFrancesco v. Excam, Inc.,* 434 Pa.Super. 173, 185, 642 A.2d 529, 535 (1994), *appeal dismissed as improvidently granted* 543 Pa. 627, 674 A.2d 214 (1996), the Superior Court determined that evidence concerning other accidents involving the instrumentality that causes the present harm is relevant to show the product was unsafe, to prove causation, and/or to show that a defendant had actual or constructive knowledge of a condition that could cause harm. However, while such evidence may be admissible, the other accidents must be sufficiently similar to plaintiff's accident.

7. In *Bialek,* plaintiff sued a brewing company for injuries alleged to have resulted from a beer bottle exploding in plaintiff's hand. The company sought to introduce evidence of its bottling process to establish that when the bottle left its control it was not defective nor unreasonably dangerous. Because that evidence also tends to show due care, plaintiff objected and maintained that it was inadmissible and would mislead the jury into believing that the plaintiff must show negligence on the part of the brewing company. In finding the evidence admissible, we noted such evidence, while inadmissible for one purpose (to demonstrate due care), was still admissible to demonstrate a lack of defect or dangerous condition.

*Lynch v. McStome & Lincoln Plaza Assoc.*, 378 Pa.Super. 430, 548 A.2d 1276 (1988). Similarly, in *Majdic*, 370 Pa.Super. at 623, 537 A.2d at 340, the Superior Court affirmed the trial court's refusal to admit into evidence prior accidents involving the product at issue since plaintiff had failed to demonstrate that those accidents were sufficiently similar to plaintiff's accident. The *Majdic* Court further emphasized that the admission of such evidence is "tempered by judicial concern that the evidence may raise collateral issues which confuse both the real issue and the jury." *Id.* at 624, 537 A.2d at 340–41. In reaching that decision, the Superior Court noted that the admission of such evidence is vested within the sound discretion of the trial court. *Id.* (citing *Whitman v. Riddell,* 324 Pa.Super. 177, 180–182, 471 A.2d 521, 523 (1984)).

While our Court has yet to directly address the admissibility of evidence of prior claims in a defendant's case-in-chief in a product liability action, in *Orlando v. Herco, Inc.*, 351 Pa.Super. 144, 505 A.2d 308 (1986), the Superior Court addressed a related evidentiary issue. In *Orlando*, plaintiff brought an action based upon breach of the implied warranty of merchantability, contending that he had become ill after consuming shrimp creole at the Hotel Hershey. The trial court allowed the hotel to present evidence that they received no other complaints from the twenty other guests who had consumed the shrimp creole that day. In affirming that decision, the Superior Court indicated that while it is not necessary to establish negligence in a breach of warranty claim, "it does not follow that evidence showing the absence of a defect is inadmissible merely because it tends to show that due care was exercised in the product's preparation or manufacture." *Id.* at 147, 505 A.2d at 309.

Courts of other jurisdictions have squarely considered the admissibility of no known prior claims testimony in defendant's case-in-chief, rendering decisions which we find instructive. In *Espeaignnette v. Gene Tierney Company, Inc.*, 43 F.3d 1 (1st Cir.1994), a worker who was injured using a wood saw machine brought a strict liability action against the manufacturer. The district court not only denied the worker's

motion to exclude evidence of the absence of comparable accidents involving the wood saw, but permitted the president of the company to testify that the company received no reports of similar accidents. The Court of Appeals for the First Circuit affirmed, finding that evidence of the absence of prior accidents tends to disprove causation and is both probative and relevant as to whether the product as designed was unreasonably dangerous. *Id.* at 9. In that decision, the court stressed that such evidence would not be admitted unless the offering party first establishes that the lack of accidents was in regard to products substantially identical to the one at issue and used in a setting sufficiently similar to those surrounding the product at the time of the accident. *Id.* (citing *Klonowski v. International Armament Corp.*, 17 F.3d 992, 996 (7th Cir.1994)).

Similarly, in *Jones v. Pak–Mor Manufacturing Company*, 145 Ariz. 121, 700 P.2d 819 (1985), the Arizona Supreme Court held that in a product liability case involving a defective design claim, evidence of the existence or non-existence of prior claims is admissible provided that the offering party establishes the necessary predicate for the evidence. In reaching that conclusion, the Arizona Supreme Court recognized that evidence of a lack of prior accidents is no more than evidence that plaintiff was the first to be injured, creating the considerable risk of misleading the jury. *Id.* at 127, 700 P.2d at 825. As such, a defendant must create a proper foundation before such evidence is admitted, including that if there had been prior accidents, the defendant would have known about them.[8] Accordingly, the *Jones* Court created a rule providing for the discretionary admission of such evidence in defective design cases. Moreover, the *Jones* rule promotes safety in that it provides manufacturers with an incentive to acquire, record and maintain information regarding the performance of their products. *Id.* at 128, 700 P.2d at 826.

**8.** The *Jones* Court noted that if the evidence is no more than testimony that no lawsuits have been filed, no claims have been made or that the defendant has never heard of any accidents, the trial judge should generally refuse such evidence since it has little probative value and has a high danger of prejudice. We agree with that assessment.

■ The thrust of *Espeaignnette* and *Jones* is that lack of prior claims evidence may be admitted in a design defect product liability action if relevant to a contested issue of causation. We believe that the same reasoning should be applied in Pennsylvania, and, therefore, we hold that evidence of the non-existence of prior claims is admissible subject to the trial court's determination that the offering party has provided a sufficient foundation—that they would have known about the prior, substantially similar accidents involving the product at issue. Clearly, the determination of admissibility turns upon the facts and circumstances of the particular action. As such, the trial court must assess whether the offering party lays a proper foundation by establishing the accident occurred while others were using a product similar to that which caused plaintiff's injury. *See e.g., Balsley v. Raymond Corporation,* 232 Ill.App.3d 1028, 175 Ill.Dec. 493, 600 N.E.2d 424 (1992), *appeal denied* 147 Ill.2d 625, 180 Ill.Dec. 147, 606 N.E.2d 1224 (1992)(defendant provided insufficient foundation regarding admission of lack of prior accidents since defendant's expert failed to provide testimony that the product at issue contained no variables and was used in substantially the same manner, and therefore, other machines were not used in substantially similar manner); *Klonowski v. International Armament Corporation,* 17 F.3d 992 (7th Cir.1994)(since manufacturer failed to lay the proper foundation that all of the shotguns it sold since 1980 employed a trigger mechanism substantially identical to the shotgun at issue, trial court properly refused to allow defendant's expert to testify as to the number of shotguns sold without report of injury).

■ Instantly, Tilley introduced Robert Howland's testimony to demonstrate that over 100,000 type 3 ladders have been put into the marketplace over the last one hundred years and there were no prior similar claims for this ladder model of which Tilley was aware. The trial court ruled the testimony admissible after it had conducted an in camera review of Tilley's claims log, finding the log both comprehensive and reflective of all reports, claims or problems involving its ladders. Having determined that Tilley maintained a reliable

product problem log, the trial court was convinced that the ladder contained no variables which would diminish the requirement of substantial similarity. As such, the trial court had a sufficient factual basis and did not abuse its discretion in admitting the testimony at issue.[9]

In ruling that Howland's testimony was admissible, the trial court recognized that the record does not reflect how President Howland knew that no prior claims had been made (but for his position as Company President), or how long the log was maintained. However, the trial court correctly suggested that the development of further information was the responsibility of the Spinos:

> Certainly, plaintiffs' counsel was at liberty during Mr. Howland's video-taped trial deposition to have explored these matters or, later, to have examined defendant's proffered witness. Instead, all that plaintiffs' counsel offered to the Court by way of argument out of hearing to the jury ... was that Howland's 'no prior claims' testimony "fails to identify (i) failures that did occur that did not result in personal injury; and (ii) failures that did occur that resulted in injury not reported, i.e. not by way of suit or claim." The Court is of the view that such argument goes to the weight of evidence rather than the reliability of the Company's claims history record-keeping data.

(trial court opinion at p. 15). As the trial court noted, the Spinos' counsel did not pursue any cross-examination of Mr. Howland concerning the reliability of the Company's log. Again, the trial court noted since the Spinos "passed" on Tilley's proffer of a witness to elaborate on the log entries, they waived claiming the log was unreliable. *Id.* at 14–15 (citing *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974)).

---

9. It is important to emphasize that the prior claims evidence produced at trial was only one aspect of Tilley's evidence in this action. This evidence was admitted to establish the lack of a defect, yet, there were other defenses which were asserted at trial as well. Tilley's expert offered evidence that the split in the back of the ladder existed prior to Mrs. Spino's injury, and an anti-split device would not have prevented this event.

This Court is fully cognizant of the danger of misleading a jury and the problems of prejudice in the inability of the opposing party to meet the evidence. However, there is little logic in allowing the admission of evidence of prior similar accidents but never admitting their absence. Clearly, had the Spinos discovered other accidents involving the type 3 household ladder, such evidence would be admissible subject to the trial court's discretion concerning similarity of both product and circumstances. *DiFrancesco, supra, Lynch, supra, Majdic, supra.*

In adopting a rule allowing lack of prior claims evidence subject to the trial court's discretion, we are careful to note that while evidence of the absence of prior claims is admissible as relevant to the issue of causation, the evidence does not dictate an absolute finding that the product is not defective or unreasonably dangerous. As the Superior Court cogently observed:

> Once the trial court determines that such assertions are relevant and admissible, the evidence must, of course, still survive the test of its weight for there are ample aspects of such evidence upon which an able cross-examiner may feast .... the issue here addressed defies pronouncement of a *per se* principle since it remains for the trial judge in each case, as the offer of proof is considered, to weigh all of the attendant factors in an assessment of the relevancy and probative value of the proffered evidence.

*Spino,* 448 Pa. Super. at 349, 671 A.2d at 737. Opposing counsel can, and indeed should, soundly attack any prior claims testimony. We believe it is incumbent upon the party opposing the absence of prior claims testimony to attack such evidence through cross-examination, as well as request a cautionary or limiting instruction be provided.

As we find the trial court did not abuse its discretion in admitting Robert Howland's testimony concerning absence of prior claims, the Superior Court's decision is affirmed.

CAPPY, J., files a concurring opinion.

CAPPY, Justice, concurring.

I join in the result arrived at by the majority today and in its opinion insofar as it states that evidence of lack of past claims may be introduced only if relevant to the contested issue of causation. *See* Majority op. at 1173. I disassociate myself from this opinion, however, insofar as it could be read for the proposition that such lack of past claims evidence could be admissible for the issue of whether the product was defective. *See, e.g.,* Majority op. at 1174 ("[W]hile evidence on the absence of prior claims is admissible as relevant to the issue of causation, the evidence does not dictate an absolute finding that the product is not defective or unreasonably dangerous.")