Maureen MORONEY and Peter
Russen, Appellants,

v.

GENERAL MOTORS CORPORATION,
K–Mart Corporation and Chester
Vaxter, Jr., Appellees.

Superior Court of Pennsylvania.

Argued Oct. 28, 2003.
Filed April 7, 2004.
Reargument Denied June 18, 2004.

James L. Pfeiffer, Phillipsburg, NJ, for appellants.

Thomas J. Finarelli, Philadelphia, for General Motors, appellee.

Before: DEL SOLE, P.J., HUDOCK and TODD, JJ.

DEL SOLE, P.J.

¶ 1 This appeal follows a jury trial and verdict in favor of the defendant General Motors Corporation (GMC), finding, in response to an interrogatory, that the design of its vehicle which included an automatic unlock feature was not defective.

¶ 2 The trial court summarized the relevant background of this case:

On June 1, 1995 at approximately 3:00 P.M. Maureen Moroney ("Moroney") arrived at Kmart to shop. While she was driving through the parking lot she noticed Vaxter [defendant Chester Vaxter, Jr.] walking through the parking lot. In her testimony, Moroney indicated that based upon Vaxter's appearance, he appeared to pose a potential threat to her. As a result she proceeded to drive away from the area Vaxter was in, and parked close to the entrance of the store.

Upon parking her vehicle, Moroney turned off the ignition of her car, a 1995 Grand Am manufactured by GMC. This car was designed such that when the ignition was turned off, the vehicle door locks automatically opened. As Moroney was otherwise distracted inside the car, Vaxter approached and opened the driver's side car door and entered the vehicle.

Vaxter demanded that the plaintiff turn over her keys and proceeded to violently assault Moroney. The assault was discovered by a Kmart employee, Doris Hauser ("Hauser"), as she was leaving the store. Hauser went back to the store for help and returned to the scene of the assault with another employee. The assault was interrupted and Vaxter fled from the scene. Vaxter was later arrested by the police.

Trial Court Opinion, 12/16/02, at 3–4.

¶ 3 Thereafter, Appellants [1] brought an action against Vaxter based upon assault and battery, the Kmart Corporation for negligence, and GMC alleging negligence and strict liability. Kmart was dismissed from the action after having successfully moved for summary judgment. The case against GMC and Vaxter proceeded to a jury trial. The jury found Vaxter liable for assault and battery and awarded Maureen Moroney $1.8 million in damages and her husband, Peter Russen $360,000 in damages. The jury returned a verdict in favor of GMC responding in the negative to an interrogatory asking whether plaintiffs proved the vehicle was defective in design because of the inclusion of the automatic unlock feature.

¶ 4 Following the jury verdict, Appellants filed a motion for post-trial relief. After entertaining argument on the motion the trial court accepted Appellants' claim that the court erred by failing to give an instruction on strict liability under a failure to warn theory. Accordingly, the court entered an order granting a new trial. GMC promptly filed a motion for reconsideration, which the trial court considered and ultimately granted. Judgment was entered on the verdict and this appeal followed.

¶ 5 Appellants raise six issues on appeal. They allege error in the court's admission of Appellee's expert's testimony and of evidence it offered of the non-existence of similar prior claims or lawsuits. Appellants also claim they were improperly denied the right to present a case on strict liability for failure to warn and negligent failure to warn. They further contend that the trial court improperly ruled that it

1. Plaintiffs included both Moroney and her husband Peter Russen.

**632**

could not pursue recovery under a negligence theory where the jury found no defect on the strict liability claim. In their final two issues Appellants assert error in the court's charge to the jury and in the interrogatories submitted for its consideration.

¶ 6 We conclude, based on a recent pronouncement of our Supreme Court, Appellants were wrongly precluded from pursuing recovery under a negligence theory in this matter and a new trial on the negligence claim is required. As Appellants' claims regarding the court's charge and interrogatories all relate to the claim of negligence, they will be not be discussed separately herein. We further find no merit to the claims made by Appellants which concern strict liability and failure to warn, and as to these claims no new trial is warranted.

¶ 7 We begin by discussing the issues presented which relate to the jury's verdict regarding strict liability and failure to warn. Appellants first question whether their pre-trial motion to exclude Appellee's expert's testimony was improperly denied. Appellants in their motion alleged that Appellee's proposed expert was an electrical engineer, who prepared a report concerning the mechanical aspects of the vehicle but that this report was not probative to the subject matter of security. They sought to prove that the intended function of the locking system created a security risk to the occupants and claimed that this expert was not qualified to provide an opinion as to security or lack thereof.

¶ 8 The basic requisite for the admission of any evidence is that it be both competent and relevant. Evidence is competent if it is material to the issues to be determined at trial, and relevant if it tends to prove or disprove a material fact in issue. The question of whether evidence is admissible is a determination that rests within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the court clearly abused its discretion. *Turney Media Fuel, Inc. v. Toll Bros.*, 725 A.2d 836, 839 (Pa.Super.1999).

¶ 9 In considering this claim the trial court remarked: "Plaintiffs' argument is correct in a limited sense, as McKendry is not an expert in the field of security. However, McKendry's experience and education are relevant to the issue of how automatic door lock/unlock systems are designed and function, including how these designs may impact on security issues." Trial Court Opinion, 6/13/02, at 4. At trial this expert admitted that he had no training in security or criminology and that he was not testifying as a security expert. N.T., 2/13/02, at 116–117. Further in response to Appellants' objection, the court refused to permit the witness to answer a question which called for him to conclude whether the vehicle was defective from a security perspective. N.T., 2/24/02, at 421.[2] The witness did offer testimony regarding the general workings of the electrical system, the automatic locking feature and the means by which it could be disabled by a fuse. *Id.* at 417. This testimony was all material and relevant and we perceive of no abuse of discretion in the court's decision to deny Appellants' pre-trial motion.

¶ 10 Appellants next question whether the trial court improperly allowed evidence of the non-existence of prior claims or lawsuits because a proper foun-

**2.** The follow-up question asked generally if the design of the door lock feature was defective. The witness responded: "I feel it's a safe design." N.T. 2/14/02, at 423. Appellants did not make a motion to strike this response.

dation was not laid. The admission of lack of prior claims evidence is subject to the trial court's discretion. *Spino v. John S. Tilley Ladder Co.*, 548 Pa. 286, 696 A.2d 1169 (1997). In this case the witness testified that a search was conducted of other claims and/or lawsuits and found that no similar claims had been made. Appellants argue that "the defendants offered absolutely no testimony that other individuals faced conditions or situations substantially similar to the one that the plaintiff found herself in on the day of the incident." Appellants' Brief at 26. However, if no similar incidents ever occurred or were never reported, the defense could not elicit such testimony because it simply does not exist. That is not the type of foundation sought to be established as set forth in *Spino*. Rather, it must be shown that the offering party should and would have the means to know about any prior, substantially similar accidents involving the product at issue. *Id.* at 1173. The *Spino* court instructed that the determination of admissibility turns upon the facts and circumstances of the particular action. *Id.* In assessing whether the offering party has laid a proper foundation the court is to determine if that party has established that the accident occurred while others were using a product similar to that which caused plaintiff's injury. *Id.*

¶ 11 The witness at trial testified that he directed research to be done at General Motors to determine whether there were any other claims or lawsuits involving a person who alleged to have been injured as a result of the automatic door unlock feature, and found no other similar incidents. He testified that this feature was put in most car lines in about 1994 and he estimated that it was used in approximately 37 to 38 million vehicles. N.T., 2/14/02, at 441. In evaluating Appellants' claim the trial court noted that the witness did not research the matter himself and thus had a

hearsay objection been made, it would have been granted. However, none was made. Appellants did object to the reliability of the information offered. While their objection was overruled, on cross-examination they were able to question the witness regarding his lack of knowledge concerning the collection of the data. The jury was free to consider and accept or reject his testimony. See *Spino* (where the trial court recognized that the record did not reflect how the company president knew that no prior claims had been made, it properly found the development of further information was the responsibility of the opposing party). Under these circumstances, we perceive of no abuse of discretion in the trial court's ruling.

¶ 12 We likewise find no error in the court's refusal to allow Appellants' failure-to-warn claims to proceed to the jury. The trial court initially concluded that Appellants failed to set forth a failure-to-warn claim in their pleadings, but upon further review it determined that such claims had been pled. The trial court ultimately concluded however that, despite the fact that failure-to-warn claims were pled, they were not established at trial. The court found that Appellants offered no evidence to establish that any warnings would have prevented the attack which occurred in this case. It stated:

> Ms. Moroney knew Vaxter was in the parking lot, and recognized him as someone to be avoided. She admitted that she knew that by turning off the ignition, the car doors would automatically unlock. Finally she knew that she could re-lock the doors either manually or automatically.

Trial Court Opinion, at 5.

¶ 13 In claims involving a failure-to-warn defect, the plaintiff must first show that the hazardous condition of the

product was a cause in fact of the injury, and then that the absence or inadequacy of warnings addressing that condition was the legal cause of the injury. *Coward v. Owens–Corning Fiberglas Corp.*, 729 A.2d 614, 620 (Pa.Super.1999).[3] In this instance regardless of whether the condition of the product caused the injury, Appellants did not set forth evidence to establish that the absence or inadequacy of warnings caused the injury. Rather, the evidence demonstrated that Ms. Moroney was aware of the operation of the locks on her car and the potentially menacing individual in the parking lot. There was no evidence offered to suggest that warnings regarding the locks would have prevented the attack. Accordingly, it was appropriate for the trial court to refuse to permit the jury to consider Appellants' claims for strict liability and negligent failure-to-warn.

¶ 14 We next consider three of Appellants' issues together as they each concern Appellants' ability to present their claim of negligence to the jury. Appellants argue that the trial court wrongly concluded that they could not present a separate case of negligence to the jury if the jury found no defect as to the strict liability claim. In related questions Appellants ask whether the trial court erred in refusing to charge the jury on negligence, ruling that it was subsumed by the strict liability cause of action. They further assert these actions by the trial court resulted in confusing, conflicting and incomplete jury instructions and interrogatories.

¶ 15 In ruling as it did the trial court relied upon language contained in this Court's decision in *Dambacher by Dambacher v. Mallis,* 336 Pa.Super. 22, 485 A.2d 408 (1984). Therein it states: "in a negligence case the plaintiff must prove, not only **that the product was defective** and that the defect caused his injury, but in addition, that in manufacturing or supplying the product the defendant failed to exercise due care." 485 A.2d at 424. This language was later cited in *Fitzpatrick v. Madonna,* 424 Pa.Super. 473, 623 A.2d 322, 326 (1993), wherein the court ruled there could be no liability for negligence because the product at issue was not defective. Relying on these decisions the trial court concluded that the jury should not consider a separate action for negligent design if the product was not defective.

¶ 16 The trial court recognized criticism of this position set forth by the federal third circuit court of appeals in *Griggs v. BIC Corp.*, 981 F.2d 1429 (3rd Cir.1992). The court in *Griggs* considered a claim by defendant-BIC that the failure of a strict liability claim should automatically be fatal to a negligence claim based upon the same nucleus of operative facts. The court found such reasoning obscured the true difference between negligence and strict liability. The court recognized that it was responsible for applying Pennsylvania law and predicted that the Pennsylvania Supreme Court would reject the ruling of *Dambacher* and would recognize that proof of negligence may be possible without a

---

**3.** In *Coward* a distinction was made between other failure-to-warn cases and those involving toxic torts where plaintiffs faced exposure during their employment. It was held that a toxic tort plaintiff need not demonstrate failure-to-warn defect causation by introduction of affirmative evidence. The Court reasoned these plaintiffs are exposed in the course of their employment under circumstances that provided them no meaningful choice of whether to avoid exposure. This so-called "heeding presumption" has been authorized in Pennsylvania only in cases involving workplace exposure to asbestos. *Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534, 537 (Pa.Super.2003). This case does not present such circumstances.

finding of strict liability. *Griggs*, 981 F.2d at 1439. The decision in *Griggs* was later relied on in *Hittle v. Scripto–Tokai Corp.*, 166 F.Supp.2d 142 (M.D.Pa.2001). Therein the court rejected the defendant's claim that because there was no evidence that the lighter in question was defective under strict liability principles, then there necessarily could be no claim .of negligence. The trial court in this case, while acknowledging the federal courts' decisions in *Gregg* and *Hittle*, deemed itself bound by our state law as expressed in *Dambacher*.

¶ 17 Since the trial court's ruling in this matter, the Supreme Court of Pennsylvania has spoken on this issue. In *Phillips v. Cricket Lighters*, 576 Pa. 644, 841 A.2d 1000 (2003), the Court considered a case where a five-year old child inadvertently started a fire with a cigarette lighter which lacked any child resistant features. The Court first ruled that the strict liability claim was properly dismissed on summary judgment where the lighter was not unsafe for its intended users. The Court then considered the defendants' argument "that if we deem that the trial court properly granted summary judgment on Appellee's strict liability claim, then perforce we must hold that her negligence claim also fails." *Id.* at 1008. The Court held: [4]

> This reasoning is deeply flawed and we decline to adopt it. As we discussed supra, negligence and strict liability are distinct legal theories. Strict liability examines the product itself, and sternly eschews considerations of the reasonableness of the conduct of the manufac-

turer. In contrast, a negligence cause of action revolves around an examination of the conduct of the defendant. Were we to dispose of a negligence claim merely by an examination of the product, without inquiring into the reasonableness of the manufacturer's conduct in creating and distributing such a product, we would be divorcing our analysis from the elements of the tort. Thus, as the elements of the causes of action are quite distinct, it would be illogical for us to dispose of Appellee's negligence claim based solely on our disposition of her strict liability claim.

*Id.* at 1008 (citations omitted)

¶ 18 Accordingly, following the pronouncement of *Phillips*, we find the trial court did err when it refused to permit the jury to consider Appellants' negligence claim. While the jury concluded that the locking mechanism was not defective in design or function, they should have been able to consider whether Appellee was negligent by unreasonably creating a locking system which operated to automatically unlock the vehicle when it was turned off. The absence of success of Appellants' strict liability claim should not have foreclosed this question from being presented to the jury.

¶ 19 For the foregoing reasons we affirm the judgment for Appellee on the strict liability and failure-to-warn claims and we remand for a new trial on Appellants'

---

4. The opinion in this matter was authored by Mr. Chief Justice Cappy. Mr. Justice Saylor authored a concurring opinion which was joined by Messrs. Justice Castille and Eakin. Therein he states: "I join the majority disposition on the strict liability and **negligence** claims under present law." *Phillips v. Cricket*, 841 A.2d at 1012 (Concurring Opinion by Saylor, J.) (emphasis added). Thus the lead opinion garners a clear majority as Mr. Jus-

tice Nigro concurred in the result and former Chief Justice Zappala did not participate in the decision of the matter. The lone dissenter on this point was Madame Justice Newman who filed a concurring and dissenting opinion: "respectfully disagree[ing] with the majority because I do not believe that we should allow the negligence causes of action to remain." *Id.* at 1023 (Concurring and Dissenting Opinion by Madame Justice Newman).

claim of negligence. Jurisdiction relinquished.