**Gaudio v. Ford Motor Co.**

318

*Charles Kannebecker,* for plaintiffs.
*Kristen Dennison* and *David Byerly,* for defendants.

THOMSON, *S.J.,* June 14, 2007—

## OPINION PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925

And now, June 14, 2007, upon careful review of the record and of plaintiff's concise statement of matters complained of on appeal, the trial court continues to stand

by its decisions in the above-captioned case and asks that the Superior Court affirm the court's orders and the jury's verdict in favor of the defendant. In support thereof, pursuant to Pennsylvania Rule of Appellate Procedure 1925, the court would like to add the following:

## I. FACTS

The instant matter on appeal is a products-liability action. The underlying factual scenario involved in this case concerned a fatal one-car accident occurring within the private community association where the plaintiff and the decedent lived. In the early morning hours of June 20, 2001, the plaintiff's decedent was driving his 1996 Ford F-150 pickup truck on his normal route to work. According to various expert testimony from both sides, the decedent approached an intersection within his community association and slammed on the breaks. The stop sign at this intersection had fallen down several days earlier.[1] The decedent's Ford F-150 truck veered down into a ditch on the side of the road and then hit an embankment where it came to rest. When police and rescue personnel arrived on the scene, the decedent was found dead in the driver's seat. The vehicle's air bag had deployed and the decedent was not wearing a seat belt.

Both the plaintiff's and the defendant's experts found that the vehicle was traveling somewhere around 30-34 mph prior to the decedent applying the breaks. The plaintiff's experts testified that the vehicle was traveling at a barrier equivalent speed of 8.6 mph when it hit the

---

1. The plaintiff's claim against co-defendant Masthope Rapids Property Owners Council settled prior to trial.

embankment. The defense experts countered that the barrier equivalent speed at the time of impact was actually 14 mph.

The plaintiff asserted that the design of the air bag system was defective in the placement and quantity of the timing sensors. The plaintiff alleged that this defective design caused the driver's side air bag to deploy at a speed where it should not have deployed at all, or that it deployed late resulting in the decedent's body being too close to the air bag at the time of deployment. The plaintiff argued that if the air bag had not deployed, or had deployed timely, the decedent would have walked away with only minor injuries. (Trial transcript, June 6, 2006, 36:7-14; 37:8-10.)

The defendants argued that the air bag design was not defective. They argued that the air bag deployed when the vehicle hit the rocky embankment—exactly when it was supposed to. Rather, heavy breaking, the decline into the ditch, and the fact that the decedent was not wearing a seat belt caused his body to be out of position and too close to the steering wheel at the time of the air bag deployment. (Trial transcript, June 6, 2006, 53:1—55:21; 59:5-17.) They further argued that given the factual scenario involved in this accident, if the air bag had not deployed, the decedent would have still suffered significant injuries. (Trial transcript, June 6, 2006, 69:7-20.)

Following a lengthy trial, and one hour of deliberations, the jury returned a verdict in favor of the defendant. The verdict form reflected that the jury found that the crash sensor system of the Ford F-150 was not defective in that it did not lack any element necessary to make it

safe for its intended use nor did it possess any feature that rendered it unsafe for its intended use.

## II. ANALYSIS

Initially, the trial court notes that, on its face, the plaintiff's concise statement of matters complained of on appeal lacks the specificity required by Pa.R.A.P. 1925. As the defendant correctly asserts in its response to plaintiff's concise statement of matters complained of on appeal, the purpose of requiring the plaintiff to file a concise statement is to assist the trial judge in filing of record an opinion "of the reasons for the order, or for the rulings." *Commonwealth v. Lord,* 553 Pa. 415, 417, 719 A.2d 306, 307 (1998). Where the concise statement lacks the specificity necessary for the trial court to conduct meaningful review, the trial court may find waiver and disregard any argument. *Campbell v. Picard Losier & Assocs,* case no. 2693, 2007 Phila. C.C.P. Lexis 50, *5 (Phila. C.C.P., Feb. 21, 2007); *Commonwealth v. Reeves,* 907 A.2d 1, 2 (Pa. Super. 2006).

For example, in paragraphs 2(a)(c)(d) and (j), the plaintiff makes general allegations that the court impermissibly allowed testimony regarding the decedent's pre-accident conduct, including his seat belt non-usage, without giving any reference to the specific testimony complained of or from whom it was elicited. Further, paragraphs 2(b)(d)(e) and (f) allege that the court impermissibly permitted evidence utilized in a risk/benefit analysis without any reference to the specific physical evidence or testimony complained of on appeal.

The vague and overbroad nature of the plaintiff's concise statement has necessitated a line by line review

of the transcript of the nine-day trial and the extensive pleadings in this case in an effort to pinpoint the specific alleged errors. As the defendant notes, where the plaintiff fails to comply with the requirements of Pa.R.A.P. 1925, the trial court may deem the matters waived on appeal. However, because the trial court has had the benefit of oral argument regarding the plaintiff's post-trial motions and extensive briefs on the issues when they were raised in both post- and pretrial motions, the trial court does not deem these matters waived.

Rather, the trial court recognizes that this trial focused on complex products liability issues related to the applicability of the crashworthiness doctrine and the risk/utility analysis, as well as the proper interpretation of Pennsylvania's Seat Belt Statute in the context of a design defect case where crashworthiness is an issue. The proper application of these principles is unclear under the current state of Pennsylvania law, and the trial court welcomes guidance from the appellate courts.[2] As such, the trial court will now address the substantive issues raised on appeal.

The plaintiff raises 18 matters on appeal. The plaintiff has divided these issues generally into alleged errors regarding the trial court's instructions to the jury and

---

2. This court shares the views as expressed in a recent order from the Delaware County Court of Common Pleas which stated, "while the court feels that a risk-benefit analysis is relevant, it is perplexed as to how the evidence should be presented and who should make the decision with respect to this issue. In crashworthiness cases the procedure seems unclear as how to appropriately decide this issue whether to the jury during trial or by the judge alone." *Busa v. Ford Motor Company,* Delaware County Court of Common Pleas, no. 04-3469 (2006).

alleged errors regarding the trial court's rulings regarding the plaintiff's motions in limine. The trial court will first address the issues raised relating to the evidentiary decisions of the court with regard to the plaintiff's motions in limine. While the plaintiff has raised 10 issues pertaining to the trial court's ruling regarding these motions in limine, for the sake of brevity, these issues can be divided into four general categories of evidence. These are (1) evidence of the decedent's pre-impact behavior including seat belt non-usage, (2) evidence of compliance with industry and government standards, (3) evidence of "generalized statistics" and (4) evidence pertaining to a risk/benefit analysis.

## A. *Evidentiary Rulings on Plaintiff's Motions in Limine*

### 1. Evidence Regarding the Decedent's Pre-Impact Behavior and Seat Belt Non-Use

First, the plaintiff complains that the court erred in allowing evidence of the decedent's pre-impact behavior. Specifically, the plaintiff complains that references to the decedent breaking suddenly, swerving into a ditch, and not wearing a seat belt were impermissibly introduced to show the decedent's negligence in causing the accident. The plaintiff correctly asserts that comparative negligence principles do not apply to a products liability action sounding in strict liability. *Habecker v. Clark Equip. Co.,* 36 F.3d 278, 282 (3d Cir. 1994) *(Habecker III); Azzarello v. Black Brothers Co.,* 480 Pa. 547, 558, 391 A.2d 1020, 1027 (1978). Yet, the plaintiff neglects to point out that this court expressly prohibited this evidence from being offered to prove comparative negli-

gence on the part of the plaintiff's decedent. (Trial court order, June 1, 2006, original record pp. 121-22.) The court further notes that the plaintiff's assertions of error related to evidence of causation is moot as the jury returned a verdict of "no defect." (Jury verdict, original record p. 140.)

The plaintiff also fails to recognize that the same evidence can be used for different reasons. "[N]ot every mention of a negligence-related concept poisons a strict liability claim. . . . Indeed, 'evidence which is inadmissible for one purpose may be admissible for another.'" *Daddona v. Thind,* 891 A.2d 786, 810 (Pa. Commw. 2006) (quoting *Spino v. John S. Tilley Ladder Co.,* 548 Pa. 286, 292, 696 A.2d 1169, 1172 (1997)).

While the evidence described above could be used, although inappropriately, to put forth an argument regarding negligence on the part of the plaintiff's decedent, the fact is that it was *not* used in that fashion. Rather, the evidence was admitted to prove the defendant's theory regarding the decedent's position in the vehicle at the time of air bag deployment and at the time of the vehicle's impact with the embankment.

The plaintiff also objects to defense expert testimony that the decedent may have been pressing his arm against the box of paperwork in the seat next to him to prevent it from spilling onto the floor when he applied the breaks, or reaching for a fallen cigarette. This evidence countered the testimony of the plaintiff's experts who asserted that the decedent was sitting with his back against the seat and bracing prior to impact. Contrary to the assertions of the plaintiff the defense evidence was not based purely on speculation, but upon forensic evidence found

in the vehicle. The defense experts provided reasonable inferences into the decedent's conduct based upon the pattern of blood splatter in the vehicle and the condition and placement of the paperwork.

"A trial court is vested with wide discretion in deciding whether to allow the admission of expert testimony into evidence and is not subject to reversal absent a clear abuse of discretion." *Id.* at 805. The trial court does not believe it abused its discretion in admitting the aforementioned expert testimony. To prohibit testimony which explains the defense's theory regarding the decedent's position in the vehicle relative to the timing of the air bag deployment would, in effect, deprive the defendant from presenting any meaningful defense to the plaintiff's theory. As such, the trial court found evidence, of the pre-impact circumstances, was both relevant and admissible.

Further, specifically as it relates to the decedent's seat belt non-usage, the plaintiff complains that such evidence is barred by the Pennsylvania Seat Belt Statute, 75 Pa.C.S. §4581. The Pennsylvania Seat Belt Statute states, in relevant part, the following:

"In no event shall a violation or alleged violation of this subchapter be used as evidence in a trial of any civil action; nor shall any jury in a civil action be instructed that any conduct did constitute or could be interpreted by them to constitute a violation of this subchapter; nor shall failure to use a child passenger restraint system, child booster seat or safety seat belt system be considered as contributory negligence nor shall failure to use such a system be admissible as evidence in the trial of any civil action . . . ." 75 Pa.C.S. §4581(e) (2007).

The plaintiff argues that the seat belt statute broadly, and without exception, prohibits any evidence of the non-use of a seat belt in any civil action. Curiously, the counsel for the plaintiff, Mr. Coben, presented the opposite argument before the Superior Court in *Kreiensieck v. Lowery,* 806 A.2d 472 (Pa. Super. 2002).[3] There, the plaintiff argued that the purpose of Pennsylvania's Seat Belt Statute was to protect injured parties from claims of contributory negligence and comparative fault. Thus, the statute does not mandate an absolute bar on such evidence, but instead has a limited application.

The Superior Court in *Kreiensieck* agreed, holding that where a violation of the seat belt law is not used to prove contributory negligence, but rather for the purpose of proving causation in a products liability claim, Pennsylvania's Seat Belt Statute does not preclude the admission into evidence of seat belt non-use. *Kreiensieck,* mem.op. at 11-12.[4] Further, the plaintiff fails to cite to any relevant products liability cases which have barred evidence of seat belt non-use.

Also, interesting to note is that the plaintiff misquotes the Pennsylvania Seat Belt Statute at issue in its supple-

---

3. The trial court recognizes that this is an unpublished opinion, nevertheless the trial court found the reasoning used by the Superior Court in this case persuasive.

4. While not binding precedent, the trial court notes that Common Pleas Courts in Allegheny and Philadelphia counties have similarly held that evidence of seatbelt non-use is admissible for purposes other than proving contributory negligence. See generally, *Clingan v. Kooser,* no. GD97-16926, order of ct. (C.C.P. Allegheny Cty., Nov. 13, 2000) (attached to defendants' response to plaintiff's motion in limine no. 3 as exhibit B); *McKinney v. American Honda Motor Co.,* no. 582, December term 1988 (C.C.P. Phila. Cty.) (attached to defendants' motion response to plaintiff's motion in limine no. 3 as exhibit C).

mental brief in support of their motion for post-trial at page 10. (Original record p. 143.) The plaintiff adds a comma between the words contributory negligence and the phrase "nor shall failure to use such a system be admissible as evidence in the trial of any civil action . . . ." This addition is more than a mere typographical error. Rather, the addition of the comma removes the relevant text from the clause relating to comparative negligence and separates it into its own statutory mandate.

The plaintiff's interpretation and re-drafting to the Pennsylvania Seat Belt Statute is unreasonable. Based upon the above, the trial court determined that, given the factual circumstances present in the case at the bar, the Superior Court's interpretation in *Kreiensieck* to be the correct one. To allow evidence of seat belt use or non-use in cases where it is necessary to prove a products liability claim and then to disallow such evidence where it is necessary to disprove a products liability claim would be unjust.

Wherefore, the trial court admitted evidence that the decedent was not wearing his seat belt for the limited purpose of showing the pre-accident circumstances which gave rise to the decedent's physical position in the vehicle at the time of impact and deployment.

## 2. Evidence of Government and Industry Standards

Second, in paragraphs 2(e)-(f) of the plaintiff's concise statement of matters complained of on appeal, the plaintiff states that the trial court erred in denying the plaintiff's motions in limine to exclude evidence of compliance with government and industry standards. This is a misstatement of the record in this case.

The trial court actually granted the plaintiff's motion to exclude evidence of government and industry standards. Yet, the court expressly cautioned the plaintiff that pursuant to Pennsylvania law, if the plaintiff opened the door by admitting evidence regarding government and industry standards, the defendants would likewise be permitted to introduce this type of evidence for purposes of rebuttal or within their case in chief. (Trial court order, June 1, 2006, original record, p. 121, note 1-2.)

That is precisely what happened. The plaintiff "opened the door" to admission of such evidence in the plaintiff's opening statement and throughout the course of the trial. The plaintiff referenced the Veridian report in its opening statement, telling the jurors that anytime there is an accident involving air bags, the government conducts an investigation. The plaintiff further relied upon this report, prepared by a firm hired by the government, to prove its case regarding the speed of the vehicle upon impact with the embankment.

Later, the plaintiff's expert Geoff Mahan testified regarding the "5 inch/30 millisecond" guideline, which upon cross-examination he characterized as an "industry standard" governing the performance of air bag systems. Mr. Mahan also testified regarding his involvement in committees that created industry standards for air bag systems. The plaintiff's expert Mr. Enz testified about his work investigating accidents pursuant to government contract to determine whether the vehicle being investigated complied with Federal Motor Vehicle Safety Standards.

The plaintiff correctly notes that in strict liability cases, evidence of compliance with industry or government standards is not admissible by a manufacturer as

such evidence "improperly injects negligence concepts into the trial." *Castner v. Milwaukee Elec. Tool Corp.,* 2004 U.S. Dist. Lexis 22488, 1-8 (D. Pa. 2004) (citing *Lewis v. Coffing Hoist Division, Duff-Norton Co. Inc.,* 515 Pa. 334, 342, 528 A.2d 590, 594 (1987)). However, evidence of non-compliance with industry or government standards is admissible by the plaintiff to prove that the product was defective. *Forry v. Gulf Oil Corp.,* 428 Pa. 334, 343, 237 A.2d 593, 598 (1968). If the plaintiff chooses to introduce evidence of industry or government standards through direct testimony or cross-examination of a defense witness, they waive their right to object to the entry of such evidence by the defendant either during cross-examination or during the defendant's case in chief. *Markovich v. Bell Helicopter Textron Inc.,* 805 F. Supp. 1231, 1240 (E.D. Pa. 1992).

Thus, "the plaintiff can open the door to evidence regarding industry standards by the manner he conducts the trial." *Castner,* 2004 U.S. Lexis at *3, note 1. Given the strategy employed by the plaintiff, the trial court continues to stand by its decision to allow the defendant to present evidence of government and industry standards.

### 3. Evidence of "Generalized Statistics"

Third, the plaintiff argues that the trial court erred in allowing into evidence "generalized statistics." First, the trial court objects to the plaintiff's characterization of the information admitted into evidence as "generalized statistics." As elaborated upon in the plaintiff's supplemental brief in support of their motion for post-trial relief, the plaintiff is actually referring to statistical evidence proffered by the defendant's expert for the defense, Russell Brantman, who stated the following, in relevant part:

"As with any air bag system on any vehicle there is always some risk if the person ends up in an extreme out of position situation. Fortunately that is an extremely rare event. Really rare event. Indeed if you look at the NHTSA SCI data base for the 1994 to 1996 F-150, that is 1994, 1995, 1996 F-150 besides Mr. Gaudio's fatality there is only one other fatality in the SCI data base due to an air bag deployment." (Trial transcript, July 14, 2006, 74:15—75:24.)

Evidence of a lack of similar accidents is admissible in a products liability action to prove that the alleged defect did not cause the accident. *Spino v. John S. Tilley Ladder Co.,* 548 Pa. 292, 696 A.2d 1169 (1997). In order to admit such evidence, the defendant must first show a substantial similarity between the accident at issue and the statistics sought to be admitted. *Id.* at 295-96, 696 A.2d at 1173-74. Second, the defendant must establish an independent indicia of reliability to the statistics sought to be admitted. That is, in order for the probative value to outweigh the prejudicial effect, the defense testimony must be more than "testimony that no lawsuits have ever been filed, no claims have been made or that the defendant has never heard of any accidents." Id. at 295-96 n.8, 696 A.2d at 1173 n.8.

The trial court found that the statistics sought to be admitted were sufficiently similar to the issues raised in the trial. The statistics referenced the vehicles of the same make, model and year along with those in years alleged to have the same design. They also referred to the same consequence alleged to have been caused by the same alleged defective part—the air bag system.

Further, the court found that the statistics referenced were independently reliable. The defense expert did not pick and choose favorable cases to reference, nor did he merely plead ignorance of other accidents. He referred to a data base maintained by an independent governmental body. That governmental body is the same governmental body that prepared the "Veridian report" utilized by the plaintiff.

The plaintiff further complains that the court admitted into evidence testimonials taken from publications such as the Highway Loss Data Institute that "air bags save lives" and "seat belts save lives." The plaintiff alleged in this case that the air bag never should have deployed in a crash occurring at such a low speed. The plaintiff asserted that had the air bag not deployed, the decedent would have walked away with only minor injuries. Thus, the usefulness of an air bag in a crash of this nature was placed directly at issue. The defendant had every right to address these arguments. Wherefore, the statements by the experts for the defense that "air bags save lives" were certainly relevant and were properly admitted by the trial court.

### 4. Evidence Relative to a Risk/Benefit Analysis

The plaintiff alleges that the trial court erred in allowing the defendant to present evidence relative to a risk/benefit analysis. As the court has already specifically addressed evidence of government and industry standards and it is unclear precisely which other evidence the plaintif complains of, the trial court will address the relevance of the risk/benefits analysis in general.

The plaintiff argues that Pennsylvania no longer applies the risk/benefit analysis in strict liability actions as such an analysis sounds in principles of negligence. While the trial court agrees that the risk/benefits analysis is not a test to be applied by a jury in a design defect/crashworthiness case, the court believes that the risk/benefits analysis is still useful in the judicial determination of the product's "intended use" and the threshold determination by the court as whether, viewing the evidence in the light most favorable to the plaintiff, recovery is appropriate.

As this case proceeded under a strict liability theory, the trial court started with the basic premise that "a manufacturer is a guarantor of its product." *Azzarello v. Black Brothers Co.,* 480 Pa. 547, 553, 391 A.2d 1020, 1023-24 (1978). Thus, on trial in a products liability case is the safety of the product itself and not the conduct of the manufacturer. *Phillips v. Cricket Lighters,* 576 Pa. 644, 655-56, 841 A.2d 1000, 1006-07 (2003). The plaintiff must prove that the product at issue was sold in a defective condition, and that the defect was the proximate cause of the injuries. *Daddona v. Thind,* 891 A.2d 786, 796 (Pa. Commw. 2006).

In order to be successful in a products liability action based upon allegations that the product was designed defectively the plaintiff must prove that the product was not safe for its intended use. *Putt v. Yates-American Machine Co.,* 722 A.2d 217, 221 (Pa. Super. 1998); *Azzarello,* 480 Pa. at 559, 391 A.2d at 1027. "The jury may find defect where the product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it

unsafe for the intended use." *Azzarello,* 480 Pa. at 559, 391 A.2d at 1027. (footnote omitted)

Yet, before the case can be submitted to a jury, it must survive a threshold analysis by the trial court. That is, in a design defect case, the trial court serves as a gate-keeper and must decide whether the plaintiff can meet her burden as a matter of law. *Schindler v. Sofamor,* 774 A.2d 765 (Pa. Super. 2001). The court must first make a legal determination as to the products "intended use." Inherent in the crashworthiness doctrine is the legal conclusion that it is foreseeable that a vehicle will be used in an accident, or, put another way, an intended use of a vehicle is that it will be involved in an accident. Thus, the crashworthiness doctrine imposes liability upon a manufacturer to the passenger of a car whose injuries are increased due to a design defect in the vehicle. *Habecker III,* 36 F.3d at 283. If enhanced injuries cannot be shown the manufacturer cannot be held liable. *Daddona,* 891 A.2d at 797.

Once the court has determined the intended use of the product, it also must determine whether, under the plaintiff's version of the facts, the product should have been designed more safely for its intended use. *Schindler v. Sofamor,* 774 A.2d 765 (Pa. Super. 2001). In so deciding, the court exercises its duties as both a risk/ultility economic analyst and a social philosopher. *Id.* In making the determination of whether a product should have been designed more safely, or to put it another way, is unreasonably dangerous . . . "it must be understood that the words 'unreasonably dangerous' have no independent significance and merely represent a label to be used where it is determined that the risk of loss should be placed

upon the supplier. . . . While a lay finder of fact is obviously competent in resolving a dispute as to the condition of a product, an entirely different question is presented where a decision as to whether that condition justifies placing liability upon the supplier must be made." *Azzarello,* 480 Pa. at 556, 391 A.2d at 1024. (footnotes omitted)

In determining whether the facts as alleged by the plaintiff support the imposition of liability upon the supplier, courts employ an "independent assessment of advantages and disadvantages, to which some attach the label 'risk-utility balancing' . . . ." *Philips v. Cricket Lighters,* 576 Pa. 644, 676-77, 841 A.2d 1000, 1019 (2003).

Applying these principles to the present case, the trial court allowed the defendant to present evidence involving a risk/utility analysis. Such evidence was then used by the trial court to rule on the defendant's oral motion for compulsory nonsuit. The trial court determined that recovery was appropriate under plaintiff's theory of the case.

It was foreseeable that a passenger would not be wearing a seat belt during an accident. Thus, the intended use of an air bag is to reduce the risk of injury in accidents both where the passenger is belted or unbelted. Assuming the facts alleged by the plaintiff were true, an air bag system that was designed to deploy in an eight-mile-an-hour crash would be unreasonably dangerous as the risk of injury to an unbelted driver is minimal. Likewise, due to the force necessary for the air bag to deploy, the risk of injury was great if the air bag was designed to deploy

late. Pursuant to Pa.R.C.P. 230.1(2), the trial court determined that the plaintiff's claims survived the threshold analysis and that the plaintiff's had established a prima facie case for a cause of action under the crashworthiness doctrine.

The case was then submitted to the jury to resolve the factual disputes (*i.e.,* at what speed did the impact occur and did the air bag deploy late) and to apply the facts to the crashworthiness doctrine. Contrary to the plaintiff's representation, the jury did not employ a risk/utility analysis. Rather, the jury verdict form asked the jury to decide four questions pursuant to the crashworthiness doctrine and to award a monetary amount if the answer to all questions was yes. The verdict form asked the following questions with regard to the crashworthiness doctrine:

"(1) Was the crash sensor system of the Ford F-150 defective in that it lacked any element necessary to make it safe for its intended use or possessing any feature that rendered it unsafe for its intended use?

"(2) When the crash sensor system of the Ford F-150 was designed, did an alternative, safer design exist that was practicable under the circumstances?

"(3) Did the design of the crash sensor system of the Ford F-150 cause or exacerbate Andrew Gaudio's injuries?

"(4) Would an alternative design of the crash sensor system of the Ford F-150 have prevented Andrew Gaudio's injuries?" (Verdict form, original record, p. 140.)

The language of the verdict form is reflective of that used in *Daddona,* 891 A.2d at 797.

Based upon the trial court's above interpretation of the relevant Pennsylvania case law, the trial court asks the appellate court to uphold its rulings regarding the introduction of evidence pertaining to a risk/benefit analysis.

## B. *Jury Instructions*

Second, the plaintiff alleges the court erred with regard to the instructions it provided to the jury. The plaintiff's concise statement of matters complained of on appeal raises eight issues with regard to the trial court's charge of the jury. Generally, the court notes that it charged the jury on all relevant issues in accordance with Pennsylvania case law and the Pennsylvania Bar Institute Suggested Standard Jury Instructions.

First, the plaintiff misstates the record with regard to paragraphs 1(d)(g) and (h) in the concise statement. With regard to paragraph 1(c) and (d), the plaintiff contends that the trial court erred in failing to charge the jury on the principles of crashworthiness. A careful review of the record in this case reveals that the trial court did, in fact, charge the jury as to the crashworthiness doctrine. In the court's charge to the jury, the trial court stated the following, in relevant part:

"In this case the plaintiff has the burden of proving that the design of the product was defective, that an alternative safer design practical under the circumstances existed. That Andrew Gaudio's injuries were caused or exacerbated by the defective design of the product and that Andrew Gaudio would not have suffered these injuries if the alternative design was used. If after considering all the evidence you feel persuaded that the propo-

sitions are more probably true than not, your verdict must be for the plaintiff. Otherwise your verdict should be for the defendant . . . the plaintiff is required to prove only that the defect was a factual cause of damages beyond those that were probably caused by the original impact. The plaintiff is not required to prove that the defect caused the accident or initial impact. Also the plaintiff is not required to prove that the defect caused specific injuries that were not the result of the original impact or collision." (Trial transcript, June 15, 2006, 14:20—15:7; 16:10-18.)

The trial court also charged the jury with regard to the issues raised in paragraphs 1(g) and (h) of the concise statement, that is, that the jury may find the product defective even if Ford acted with reasonable care and that the plaintiff's fault or conduct was inapplicable. Specifically, the trial court stated the following:

"The supplier of a product is liable for the injuries caused to a plaintiff by a defect in the article which existed when the product left the possession of the supplier. Such liability is imposed even if the supplier has taken all possible care in the preparation and sale of the product. The manufacturer of a product is a guarantor of its safety. The product must be provided with every element necessary to make it safe for its intended use, without any condition that makes it unsafe for its intended use. If you find that the product at the time it left the defendant's control lacked any element necessary to make it safe for its intended use or contained any condition that made it unsafe for its intended use and there was an alternative safer practical design then the product was defective. The defendant is liable for all harm caused

338

by the defect . . . the defendant in a strict liability case, who puts a defective product into the market remains liable to the user or consumer despite the foreseeable conduct negligent or otherwise of others for the harm caused by the product as a result of its defect." (Trial transcript, June 15, 2006, 15:8—16:2.)

The plaintiff also complains about the use of the words "intended use" in the charge regarding defect. This court does not believe that including this language was an error. As referenced above, the language "intended use" is the precise language of the crashworthiness doctrine.

For the foregoing reasons, the trial court respectfully requests that the above-captioned case be affirmed on appeal.