887 A.2d 209

Eugene S. HARSH, Lois E. Harsh, Cheryl L. Zwoyer, Co–Administrators for the Estate of Douglas Lee Harsh, deceased; Carol A. Zwoyer, Charles J. Zwoyer, Jr., Cheryl L. Zwoyer, Co–Administrators for the Estate of Connie J. Harsh, deceased; and Cheryl L. Zwoyer, Administratrix for the Estate of Tyler D. Harsh, deceased

v.

Frederick W. PETROLL and HAC Farm Lines Agricultural Co-operative Association and Cyned (a/k/a SINED) Transport Corporation and Pennsylvania Department of Transportation and General Motors Corporation and Chevrolet Motor Division, General Motors Corporation, and Jim McKay Chevrolet, Inc.

Appeal of Frederick W. Petroll and HAC Farm
Lines Agricultural Cooperative Association
and Cyned Transport Corporation.

Supreme Court of Pennsylvania.

Argued May 17, 2005.

Decided Nov. 23, 2005.

608

Angela Marie Helm, Carl D. Buchholz, Philadelphia, for Frederick W. Petroll, et al.

Daniel R. Goodemote, Harrisburg, for Dept. of Transportation.

Thomas J. Finarelli, Joseph Edward O'Neil, Mary Grace Maley, Philadelphia, Frank M. Hinman and Tyler B. Theis, San Francisco, CA, for General Motors Corp.

Dan Michael Brookhart, Jaime D. Jackson, Edward Robert Kennett, William A. Atlee, Lancaster, for Harsh et al.

James Michael Beck, Philadelphia, for Product Liability Advisory Council, Inc.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice SAYLOR.

The question presented concerns the application of joint and several liability in a strict-liability, crashworthiness context.

The civil action underlying this appeal pertains to a fatal motor-vehicle accident that occurred on April 21, 1995, on Route 30, in Lancaster County. A tractor-trailer driven by Appellee Frederick W. Petroll, traveling above the legal rate of speed and at approximately 38 miles per hour, collided with the rear of a nearly-stationary Chevrolet Lumina automobile. The automobile was crushed against a third vehicle, a fire ensued, and the Lumina's three occupants, Douglas L. and Connie J. Harsh, husband and wife, and their infant son, Tyler, were killed.

Petroll was subsequently tried and convicted on three counts of homicide by vehicle, 75 Pa.C.S. § 3732. *See Commonwealth v. Petroll,* 558 Pa. 565, 738 A.2d 993 (1999). In such proceedings, a jury determined beyond a reasonable doubt that his criminal negligence caused the fatalities. *See id.* at 587, 738 A.2d at 1005.

█ The Harsh family members' estates (the "Estates"), commenced the present civil action against Petroll and his principals, HAC Farm Lines Agricultural Cooperative Association and Cyned Transport Corporation (collectively "Appellants"); General Motors Corporation, as the Lumina manufacturer; and others. The Estates pursued damages against General Motors on a strict-liability, crashworthiness theory,[1]

1. Crashworthiness doctrine, introduced as such in *Larsen v. General Motors Corp.,* 391 F.2d 495 (8th Cir.1968), renders a vehicle manufacturer .civilly liable to an injured plaintiff for increased or enhanced injuries over and above those which would have been sustained as a

asserting that a design defect in the Lumina's fuel distribution system was a substantial cause of the fatal fire. General Motors and Appellants lodged cross-claims against each other, seeking, *inter alia,* contribution relative to any liability that would be assessed against them. *See* 42 Pa.C.S. §§ 8321–8327 (embodying the Uniform Contribution Among Joint Tort-feasors Act). The matter proceeded to trial, and, at the close of the evidence, based on Petroll's criminal convictions, the trial court entered a directed verdict against Appellants as to liability in negligence and causation (with Petroll bearing primary liability and his principals' liability being vicarious). In this regard, the court specifically ruled, and instructed the jurors, that Petroll's negligence was a substantial factor in causing the deaths of the Harsh family members.

The jurors returned a verdict in accordance with this charge. In addition, they determined that the Lumina was defective and the defect was an additional, substantial factor in causing the fatalities. Damages were assessed by the jury in the amount of $8.2 million, as to which the trial court determined that Appellants and General Motors would bear joint and several liability. For purposes of quantifying the defendants' respective contribution interests, however, the trial court also issued instructions requiring the jurors to allocate percentages of responsibility for the Estates' losses between General Motors and Appellants, and the jury assigned sixty percent of the responsibility to General Motors, and forty percent to Appellants. The verdict was molded to include delay damages, *see* Pa.R.C.P. No. 238, and entered against Appellants and General Motors, jointly and severally.

result of an initial impact, where a vehicle defect can be shown to have increased the severity of the injury. *See Kupetz v. Deere & Co.,* 435 Pa.Super. 16, 26–27, 644 A.2d 1213, 1218 (1994). Although this Court has not specifically adopted the doctrine, it has abided the adoption by the intermediate appellate courts, and crashworthiness theory is widely accepted as a valid basis to support manufacturer liability. *See generally* RESTATEMENT (THIRD) OF TORTS, PRODUCTS LIABILITY § 16 & cmt. a (1997). There is continuing controversy, however, regarding the appropriate elements of a claim, *see infra* note 20, and concerning whether crashworthiness claims grounded on alleged design defect are appropriately administered as a subset of strict liability and/or negligence theory, *see infra* note 16.

In post-trial motions, Appellants contended, *inter alia,* that under Pennsylvania law, where claims against separate defendants are premised on distinct theories of negligence and crashworthiness and the injuries attributable to each are capable of division on some rational basis, the negligent driver and the manufacturer cannot be subject to joint and several liability. Rather, Appellants asserted, damages must be fully apportioned, and liability must be several only and limited to each defendant's respective, apportioned share. Appellants' legal point in this regard was supported by a line of federal court decisions. *See, e.g., Carrasquilla v. Mazda Motor Corp.,* 963 F.Supp. 455, 459 (M.D.Pa.1997) (reasoning that "when claims against separate defendants are premised on negligence and crashworthiness, the causes of action are separate because the injuries are mutually exclusive, and the manufacturer and the negligent driver can never be joint tortfeasors.").[2] Factually, to support the claim that the Harshes' injuries were capable of rational division, Appellants relied on the Estates' evidence as demonstrating that the Harsh family survived the initial impact with moderate physical injuries and would not have died absent the fire caused by the Lumina's defective fuel distribution system.[3] On the basis of this distinction, Appellants claimed that the trial court erred by failing to require full apportionment of damages as between the distinct harms, thus relieving Appellants from any liability for the fatalities (which obviously accounted for the bulk of the $8.2 million verdict).

The trial court, however, rejected this position, finding nothing in the strict-liability, crashworthiness context that

2. *See also Harries v. General Motors Corp.,* 786 F.Supp. 446, 447–48 (M.D.Pa.1992) (citing cases); *Mills v. Ford Motor Co.,* 142 F.R.D. 271, 272–73 (M.D.Pa.1990).

3. The evidence included proof that the Harsh family members were properly restrained by seat belts; evidence that the airbags in the Lumina had properly deployed at the time of the impact; the development of the particular non-fire, impact-related, orthopedic injuries suffered by each member of the Harsh family; expert testimony that the fire resulted from a vehicle, fuel-system defect; and evidence that Mr. and Mrs. Harsh were conscious in the aftermath of the collision and, indeed, were attempting to escape the vehicle.

would justify departure from time-honored principles of Pennsylvania law maintaining that: a tortfeasor whose negligence was the legal cause of a plaintiff's injury is responsible for all injuries proximately flowing from his conduct;[4] two or more persons bear joint and several liability, although they may have acted independently, if their tortious conduct causes a single harm that cannot be apportioned;[5] the indivisible nature of an injury is a weighty factor in determining whether the harm to a plaintiff is capable of apportionment;[6] and death, by its nature, is an indivisible injury. In particular, the trial court relied on the decision in *Stecher v. Ford Motor Co.*, 779 A.2d 491 (Pa.Super.2001), *vacated and remanded,* 571 Pa. 312, 812 A.2d 553 (2002), in which the Superior Court indicated that: " '[I]f the defect is found to be a substantial factor in causing an indivisible injury such as paraplegia, death, etc., then absent a reasonable basis to determine which wrongdoer actually caused the harm, the defendants should be treated as joint and several tortfeasors.' " *Id.* at 495 (quoting *Mitchell v. Volkswagenwerk, AG,* 669 F.2d 1199, 1206 (8th Cir.1982)). The trial court emphasized that the enhanced-injury evidence was not adduced by the Estates to absolve Petroll and his

**4.** *See, e.g., Menarde v. Philadelphia Transp. Co.*, 376 Pa. 497, 504, 103 A.2d 681, 685 (1954) ("[I]f defendant's negligence was a substantial factor in producing the result, in contributing to the injury, defendant is liable for the full amount of damages sustained, without any apportionment or dimunition for the other cause or causes."). *See generally Hamil v. Bashline,* 481 Pa. 256, 264–65, 392 A.2d 1280, 1284 (1978) (discussing the integral role of proximate causation in the tort liability scheme).

**5.** *See, e.g., Powell v. Drumheller,* 539 Pa. 484, 490, 653 A.2d 619, 622 (1995) ("We have long held that a defendant is not relieved from liability because another concurring cause is also responsible for producing the injury. Where a jury could reasonably believe that a defendant's actions were a substantial factor in bringing about the harm, the fact that there is a concurring cause does not relieve the defendant of liability." (citations omitted)); *Baker v. AC & S, Inc.*, 729 A.2d 1140, 1146 (Pa.Super.1999) ("Under Pennsylvania law, it is well-established that if the tortious conduct of two or more persons combine to cause a single harm which cannot be apportioned, the actors are joint tortfeasors even though they may have acted independently."), *aff'd,* 562 Pa. 290, 755 A.2d 664 (2000).

**6.** *See, e.g., Smith v. Pulcinella,* 440 Pa.Super. 525, 528–29, 656 A.2d 494, 496–97 (1995).

principals of responsibility for the deaths of the Harsh family members, but rather, to demonstrate General Motors' shared responsibility for those fatalities. Since it was indisputable that Petroll's negligent conduct caused the collision that yielded the immediate fire and the ensuing fatalities, and the relevant harm in issue (death) was single and indivisible, the trial court concluded that joint and several liability was fairly implicated.

The Commonwealth Court affirmed on appeal, for essentially the same reasons as those relied on by the trial court, *see Harsh v. Petroll,* 840 A.2d 404 (Pa.Cmwlth.2004),[7] albeit the court tempered its reliance upon the Superior Court's *Stecher* decision in light of this Court's subsequent characterization of its reasoning as *dictum* in the appeal that followed, *see Stecher,* 571 Pa. at 320 n. 5, 812 A.2d at 558 n. 5. To the trial court's summary of relevant, general principles of tort law, the Commonwealth Court added the precept that defendants who are liable under principles of strict liability and those who are liable in negligence may be joint tortfeasors. *See Harsh,* 840 A.2d at 443 (citing *Svetz v. Land Tool Co.,* 355 Pa.Super. 230, 239, 513 A.2d 403, 408 (1986)); *see also Baker,* 562 Pa. at 300, 755 A.2d at 669; *Walton v. Avco Corp.,* 530 Pa. 568, 584, 610 A.2d 454, 462 (1992).

We allowed appeal, limited to the question, as framed by Appellants, which follows:

> Is the Commonwealth Court's holding that the Petroll Defendants and [General Motors] were joint tortfeasors based on general principles of liability law, a holding which ignores that the plaintiffs' claims were based on the crashworthiness doctrine and the evidence established that the injuries caused by the initial impact and the uncrashworthiness of the [General Motors] vehicle were divisible in nature, a question of substance which has not been decided by this Court?

7. Appellants and General Motors raised many issues in the Commonwealth Court other than the question of the proper application of joint and several liability in the strict-liability, crashworthiness context. Their other claims were rejected by the intermediate appellate court and reside outside the limited scope of this appeal.

*Harsh v. Petroll,* 580 Pa. 546, 862 A.2d 581 (2004) *(per curiam ).* As the issue involved is one of law, our review is plenary.

█ Presently, Appellants primarily maintain the position that they presented to the trial court and the Commonwealth Court, namely, that doctrinal requirements associated with crashworthiness theory are in irreconcilable tension with the imposition of joint and several liability, because plaintiffs pursuing crashworthiness claims must establish enhanced harm over and above that which would have been sustained via initial impact. *See supra* note 1. Thus, Appellants assert that where plaintiffs elect to proceed with a strict-liability, crashworthiness case, they must necessarily forego claims against negligent tortfeasors for the divisible, enhanced injuries.[8] Implicit in various aspects of Appellants' argumentation is an attack on the trial court's decision to denominate Petroll's conduct as a substantial factor in causing the deaths of the Harsh family members based upon his criminal convictions.[9] Indeed, substantial passages of Appellants' briefs are dedicated to elaborating upon the evidence suggesting that the Harshes survived the initial impact caused by the truck for which Appellants bore responsibility, in furtherance of the position that Petroll's negligent conduct should be viewed as

8. Appellants are not wholly consistent in this argument, and their position appears to shift substantially in their reply brief, in which they ultimately contend that the matter of joint and several liability should have been submitted to the jury. *See* Reply Brief of Appellants, at 10.

9. This approach is problematic, because Appellants raised this claim separately in their petition for allowance of appeal, but it was not accepted for this Court's review, as reflected in the limited grant Order, *see Harsh,* 580 Pa. at 546, 862 A.2d at 581 *(per curiam ).* It is also problematic because it is sometimes difficult to discern from Appellants' briefs whether and to what extent they are contending that, as a matter of law, crashworthiness theory is always inconsistent with the imposition of joint and several liability, or whether their claim is that the doctrines conflict only where the conduct of the negligent tortfeasor is determined by a fact finder (or otherwise) not to have been a substantial factor in causing the enhanced injury. The answer to the latter question is clear, since in Pennsylvania substantial-factor causation is required to support tort liability. *See, e.g., Powell,* 539 Pa. at 491, 653 A.2d at 622 (negligence); *Spino v. John S. Tilley Ladder Co.,* 548 Pa. 286, 293, 696 A.2d 1169, 1172 (1997) (strict liability). Thus, our analysis here focuses on the former question.

substantially remote from the losses associated with the resultant fire. Appellants nevertheless concede that, had the Estates not included the claims against General Motors on a strict-liability, crashworthiness theory, the Estates would have been entitled to assert claims for full liability as to all injuries, including death, against Appellants. Appellants' principal argument thus contemplates that the Estates' election to assert a crashworthiness claim yields an essential, corollary curtailment of the liability of an original negligent tortfeasor. Appellants cite Section 433A of the Second Restatement of Torts and Sections 16(a) and (b) of the Third Restatement of Torts, Product Liability, as supportive of this position, as well as a line of Pennsylvania intermediate appellate court decisions that have employed a multi-factor test to determine the propriety of apportionment.[10]  Finally, Appellants stress that they had no control over the design of the Lumina's fuel distribution system, and therefore, contend that they should not be liable for deaths that it caused.

Appellees, on the other hand, vigorously dispute Appellant's version of both the facts and the applicable law. Factually, Appellees emphasize the violent nature of the collision caused by Petroll's negligence, and, in particular, the status of the crash as the impetus leading to the breach of the Lumina's fuel distribution system, as the cause of the sparks that ignited released gasoline vapor, and as the reason why the Harshes were unable to dislodge the doors of the Lumina to escape the crushed and burning vehicle. Appellees argue that it is very clear that Petroll's negligence combined with the design defect in the vehicle fuel system that was found by the jury to have been a concurrent cause of the fatalities. In this regard, they derive support from the facts; the directed verdict entered by the trial court against Appellants as to substantial-factor causation; the jury's verdict; and Appel-

10.  *See Smith,* 440 Pa.Super. at 528–29, 656 A.2d at 496–98; *Glomb v. Glomb,* 366 Pa.Super. 206, 212, 530 A.2d 1362, 1365–67 (1987); *Harka v. Nabati,* 337 Pa.Super. 617, 621–23, 487 A.2d 432, 434–35 (1985); *Voyles v. Corwin,* 295 Pa.Super. 126, 131, 441 A.2d 381, 383 (1982); *Lasprogata v. Qualls,* 263 Pa.Super. 174, 179–80, 397 A.2d 803, 805–06 (1979).

lants' concession that had General Motors not been hailed into court on a crashworthiness theory that there would be no argument that Appellants were not susceptible to liability for the fatalities.[11]   In response to Appellants' position that they had no control over the Lumina's design and the fire and deaths would not have occurred absent such defect, Appellees observe that they also had no control over Petroll's criminally negligent conduct, without which there would have been no accident and no injuries at all.

For these reasons, and relative to Appellants' liability, Appellees sharply criticize Appellants' assertion of a bright-line division between the impact-related injuries suffered by the Harshes immediately preceding the fire, as well as Appellants' associated suggestion that there can be but one substantial cause of enhanced injuries in a crashworthiness case, as distortions.[12]   Indeed, the Estates indicate that these asserted distortions have become so pervasive in the present litigation that they have impacted this Court's Order framing a limited allowance of appeal (which was taken directly from Appellant's petition for allowance of appeal), since the issue as framed appears to assume the correctness of enforcing the above-described, bright-line division as a restriction on Appellants' liability.   *See Harsh*, 580 Pa. at 546, 862 A.2d at 581 (*per curiam*).   According to the Estates, a more appropriate framing of the question would be to ask whether the imposition of joint and several liability is proper relative to enhanced, indivisible injuries in a crashworthiness case where, as here, both the negligent tortfeasor's conduct and the manufacturer's product have been determined to have been substantial factors in causing the additional harm.

11.   General Motors also references Appellants' concession in the post-trial proceedings to the effect that: "Petroll's homicide by vehicle conviction dictates that he was a substantial factor in bringing about the deaths of the [members of the Harsh family]."   Brief In Support of Motions for Post Trial Relief On Behalf of Defendants, at 18.

12.   There is no question, however, that General Motors should benefit from such division, since the defect attributed to its product was not a substantial factor in causing the collision.   Accordingly, General Motors would have been entitled to apportionment of any damages specifically associated with the pre-fire injuries, upon request.

As to this issue, Appellees endorse the Commonwealth Court's and the trial court's decisions to apply general tort law precepts in the crashworthiness context. In their presentations regarding these principles, Appellees note that significantly different policies underlay the liability determination in the first instance (as to which a predominate concern is to limit manufacturer liability to injuries which their products can be fairly said to have caused), versus the imposition of joint and several liability (which favors the interests of an innocent, injured plaintiff over those of defendants who are concurrently responsible for the injury). Appellees believe that the federal court decisions cited by Appellant, *see supra* note 2, are not persuasive, since they reflect little or no effort to address these long-standing principles and policies enforced in the Pennsylvania courts. Furthermore, Appellees contend that the rule advocated by Appellants would present plaintiffs with an unfair and untenable choice, in terms of determining whether or not to assert crashworthiness claims, which would turn on the financial resources of the various, prospective defendants rather than the merits of the respective causes of action. General Motors also describes Appellants' position as perverse, since it would shift liability from Petroll, who is guilty of egregious fault, to General Motors, whose liability was determined with no assessment of fault.

Appellees also take issue with Appellants' citations to various secondary materials. For example, Appellees note that Appellants selectively discuss only subsections (a) and (b) of Section 16 of the Third Restatement of Torts, Products Liability, which delineate a manufacturer's (and not the negligent tortfeasor's) liability relative to enhanced injuries. However, they omit any reference to the subsection that is directly relevant to the liability of the negligent tortfeasor and which expressly prescribes that such actor "is jointly and severally liable or severally liable with other parties who bear legal responsibility for causing the harm, determined *by applicable rules of joint and several liability.*" RESTATEMENT (THIRD) OF TORTS, PRODUCTS LIABILITY § 16(d) (1997) (emphasis added).[13]

---

**13.** *See also id.* cmt. e & Illustration 7 ("When the plaintiff proves defect-caused increased harm ... liability of the seller and other tortfeasors is

Appellees note that a straightforward application of Section 16 of the Restatement, therefore, would not immunize accident-causing drivers from harm proximately flowing from their conduct, but rather, expressly confirms their joint and several responsibility (together with of the manufacturer where liability is established) in relation to enhanced injuries.[14] Appellees also cite many decisions from other jurisdictions that are supportive of their position.[15] For these reasons, although

joint and several. Joint and several liability is imposed because there is no practical method of apportioning responsibility that would reflect the separate causal contributions of those tortfeasors who caused the increased harm."); *see also id.* ("In those jurisdictions that retain the common law rule [of joint and several liability], all parties bear full responsibility for the entirety of the harm.").

14. Appellees note a similar omission in Appellants' citation to Section 433A of the Second Restatement of Torts: Appellants cite to Section 433A(1), which covers circumstances in which damages can be apportioned, but omit any citation to subsection (2) of Section 433A, which pertains to circumstances in which damages cannot be apportioned. Further, there is no mention of the associated commentary clarifying that death, as an indivisible injury, falls within this latter category. *See* RESTATEMENT (SECOND) OF TORTS § 433A & cmt. i. *See generally Martin v. Owens–Corning Fiberglas Corp.*, 515 Pa. 377, 381–82, 528 A.2d 947, 949 (1987) (applying the Second Restatement's Section 433A).

15. *See, e.g., Mitchell*, 669 F.2d at 1206 ("If the manufacturer's negligence is found to be a substantial factor in causing an indivisible injury such as paraplegia, death, etc., then absent a reasonable basis to determine which wrongdoer actually caused the harm, the defendants should be treated as joint and several tortfeasors."); *Craigie v. General Motors Corp.*, 740 F.Supp. 353, 359–60 (E.D.Pa.1990) (upholding the application of the usual rules of concurrent causation and joint and several liability in the crashworthiness context); *Meekins v. Ford Motor Co.*, 699 A.2d 339, 346 (Del.Super.1997) ("It is obvious that the negligence of [one] who causes the initial collision is one of the proximate causes of all the injuries [the plaintiff] sustained, whether limited to those the original collision would have produced or including those enhanced by a defective product in the second collision."); *Buehler v. Whalen*, 70 Ill.2d 51, 15 Ill.Dec. 852, 374 N.E.2d 460, 465 (1977) (characterizing circumstances in which driver negligence and manufacturing defect combined in circumstances analogous to the present ones as "a classic case of concurrent tortfeasors whose separate acts combine to produce a single individual injury" and indicating that "[u]nder these circumstances there is no apportionment"); *Uxa v. Marconi*, 128 S.W.3d 121, 132–33 (Mo.App.2003); *General Motors Corp. v. Castaneda*, 980 S.W.2d 777, 780–81 (Tex.App.1998); *Oakes v. General Motors Corp.*, 257 Ill.App.3d 10, 194 Ill.Dec. 844, 628 N.E.2d 341, 347–48 (1993); *Moore v. Chrysler Corp.*, 596 So.2d 225, 238 (La.App.1992); *Chrysler Corp. v. Todorovich*, 580 P.2d 1123, 1130–31 (Wyo.1978).

General Motors had sought relief from the verdict on other grounds, it joins with the Estate in opposing Appellant's present effort to obtain an apportionment.[16]

At the outset, we agree with the Estates that the issue as stated in our limited grant Order is not aptly framed. Its focus on the division between the impact-related, pre-fire, non-fatal injuries and the enhanced harm, *i.e.*, the fatalities, is misdirected in light of the relief that Appellants request—relief from liability for the fatalities. In determining the availability of such redress, the Estates are correct that the inquiry should center on Appellants' responsibility in relation to the injury enhancement.

As to this additional harm, the evidence adduced by the Estates was plainly supportive of substantial-factor causation. As noted by Appellees, such evidence entailed the proof that Petroll's negligence caused a violent collision that crushed the Harshes' automobile, physically breaching the fuel distribution system and generating the sparks which ignited the ensuing

---

**16.** The Product Liability Advisory Council, Inc. has also filed a brief as *amicus curiae* in support of General Motors' position. A substantial portion of this *amicus* effort is dedicated to developing the position that strict liability theory is inconsistent with crashworthiness doctrine, at least in the design defect setting. In this regard, *amicus* notes that foreseeability resides at the core of crashworthiness theory, since by enforcing a duty to make products which will reasonably minimize harm in the event of accidents, courts require manufacturers to anticipate the possibility and nature of future accidents. In *Phillips v. Cricket Lighters*, 576 Pa. 644, 841 A.2d 1000 (2003) (plurality), however, a majority of Justices enforced a strict intended use requirement in the strict liability context, rejecting the importation of foreseeability concepts in such cases. *See id.* at 656–67, 841 A.2d at 1007 (stating that "negligence concepts have no place in strict liability law") (Cappy, C.J.); *id.* at 674–75, 841 A.2d at 1018 (Saylor, J., concurring, joined by Castille, J., and Eakin, J.) (acceding to the lead opinion's narrow formulation of strict liability doctrine for different reasons); *id.* at 682–83, 841 A.2d at 1023 (Newman, J., concurring and dissenting) (also supporting the narrow formulation). To alleviate asserted, resultant doctrinal tension and confusion, *amicus* advocates adoption of the unitary, reasonableness-based defect standard of the Third Restatement of Torts, Products Liability. *See generally id.* at 675–79, 841 A.2d at 1019–21 (Saylor, J., concurring) (describing the Third Restatement's approach). While we acknowledge amicus's points in these regards and the desirability of additional clarification, the points are outside the scope of this limited appeal.

fire, and prevented the Harshes from escaping the burning vehicle.[17] Moreover, in light of the limited grant Order, we decline to look behind the trial court's decision to direct a verdict against Appellant as to proximate causation. *See supra* note 9.

With this perspective, and upon review of the parties' legal arguments, the relevant authorities, secondary materials, and the record, we are in essential agreement with Appellees' core position that the normal rules of concurrent causation and joint and several liability operative in product liability cases should also pertain in the crashworthiness context. As Appellees have developed, common law joint and several liability evolved on the theory that, as between an injured, innocent plaintiff and defendants whose breach of some duty is proximately related to the injury, it is preferable to allocate the risk of a default in the payment of due compensation to the defendants. *See, e.g., Taylor v. Celotex Corp.,* 393 Pa.Super. 566, 589–90, 574 A.2d 1084, 1096 (Pa.Super.1990).[18] The doctrine has been codified in Pennsylvania in the version of the Comparative Negligence Act that was in effect at the time of the trial of this case,[19] as well as in the

17. Notably, although they filed a reply brief, Appellants offer no answer to Appellees' repeated and strongly-worded contention that, even if the violent collision involving a fifteen-ton truck overrunning an almost-stationary vehicle at nearly forty miles per hour were not in and of itself sufficient to constitute substantial-factor causation, the impact-related condition of the Lumina that foreclosed the Harshes' escape plainly provides a factual predicate for substantial-factor causation in relation to the resultant fatalities.

18. *Accord Huddell v. Levin,* 537 F.2d 726, 744–45 (3d Cir.1976) (Rosenn, J., concurring) ("The underlying rationale of the courts has been that justice is better served by allowing an innocent plaintiff to recover his entire damages from independent and concurrent wrongdoers, when he cannot reasonably apportion his damages, than by protecting a proven wrongdoer from possible overpayment. The burden is placed squarely upon the defendant to limit his liability in such circumstances. The rule applies a fortiori to injuries which are inherently incapable of division, such as death.").

19. *See* 42 Pa.C.S. § 7102 (prescribing the right of contribution and directing that "[t]he plaintiff may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery"). In 2002, the Pennsylvania General Assembly amend-

Uniform Contribution Among Joint Tort-feasors Act, 42 Pa. C.S. §§ 8321–8327, and is thus firmly grounded.

Further, as noted by the trial court, Pennsylvania tort law also maintains that multiple substantial factors may cooperate to produce an injury, *see, e.g., Jones v. Montefiore Hosp.*, 494 Pa. 410, 416, 431 A.2d 920, 923 (1981); *Powell*, 539 Pa. at 490–91, 653 A.2d at 622, and that concurrent causation will give rise to joint liability. *See id.* We believe that this principle of concurrent causation should extend to cases involving enhanced injuries. While in fashioning a just and coherent crashworthiness jurisprudence it has been necessary to rely on the concept of enhancement to delineate the basis for and extent of a manufacturer's responsibility to answer in damages for an injury, *see, e.g., Larsen*, 391 F.2d at 503–04, the interests of justice do not require that the same line of demarcation operate automatically to relieve from liability a negligent tortfeasor whose concurrent conduct also served as a substantial factor in producing the additional harm. Indeed, we are of the view that a judicially imposed policy insulating a negligent tortfeasor from liability for enhanced injuries based on his status as the sole cause of some other distinct harm would engender substantial incongruities in Pennsylvania law, as are aptly developed in Appellees' arguments.[20]

ed the Comparative Negligence Law to curtail joint and several liability. *See* Act of June 19, 2002, P.L. 394. However, such legislation was deemed invalid by the Commonwealth Court based on the procedures employed in its enactment. *See DeWeese v. Weaver*, 880 A.2d 54, 61–62 (Pa.Cmwlth.2005), *appeal pending*, 85 MAP 2005 (Pa.).

20. Our decision here touches on matters in conflict between the Third Circuit Court of Appeal's decision in *Huddell*, 537 F.2d at 726, and those of the Eighth and Tenth Circuits in *Mitchell*, 669 F.2d at 1199, and *Fox v. Ford Motor Co.*, 575 F.2d 774, 787 (10th Cir.1978). In addition to *Huddell's* crafting of more stringent requirements in terms of the plaintiffs' delimiting of an enhanced injury, *compare Huddell*, 537 F.2d at 737–38, *with Mitchell*, 669 F.2d at 1203–05, the *Huddell* court also indicated that principles of concurrent causation and joint liability should not apply relative to enhanced injuries in a crashworthiness context, *see Huddell*, 537 F.2d at 738–39, a position which we reject here, in favor of *Mitchell's* approach on this latter point. *See Mitchell*, 669 F.2d at 1203 ("No one disputes under settled tort principles that a tortfeasor causing the original collision may be jointly and severally liable for the whole of the damage, that is, the entire verdict, even

Although there are a modest number of decisions to the contrary, we find much common ground between this position and the holdings and reasoning of other courts, *see supra* note 15, the Restatement positions as developed above, and the relevant commentary.[21] Regarding Appellants' reliance on Pennsylvania decisions discussing multiple factors in assessing the availability of apportionment, *see supra* note 10, the bulk of the collected decisions arose in the context of pre-trial settlements and/or pre-trial liability determinations in the absence of a determination of substantial-factor causation from a trial setting. *See Harka,* 337 Pa.Super. at 621–23, 487 A.2d at 434–35; *Voyles,* 295 Pa.Super. at 131, 441 A.2d at 383; *Lasprogata,* 263 Pa.Super. at 179–80, 397 A.2d at 805–06. Those that concern situations, such as the present one, in which substantial-factor causation was established at trial on a full and complete record enforce joint and several liability. *See Smith,* 440 Pa.Super. at 528–29, 656 A.2d at 496–98; *Glomb,* 366 Pa.Super. at 212, 530 A.2d at 1365–67.

■ Further, we recognize that the concepts of intervening and superseding causation may be relevant in crashworthiness and/or "second collision" cases, as in other tort litigation, depending upon the particular circumstances involved. *See generally Marshall v. City of Pittsburgh,* 119 Pa.Super. 189, 194, 180 A. 733, 735 (1935) ("Cases may arise where the elements of time and space and intervening cause may be so involved that the second injury could not be said to be the proximate, natural, and probable result of the original accident, or the second accident may so predominate that it

though the original collision may not have caused all of the damage."). Definitive resolution of the conflict concerning the development of the plaintiffs' burden to prove injury enhancement is outside the scope of the present appeal.

21. *See, e.g.,* Michael Hoenig, *Resolution of 'Crashworthiness' Design Claims,* 55 St. John L.Rev. 633, 703–04 (1981) ("In the enhanced injury case, the claimant does *not* apportion the total injuries sustained in the collision between the negligent driver causing the accident and the manufacturer whose design aggravated the injury. Similarly, the plaintiff is not required to divide up an indivisible injury. . . . The plain fact is that the tortfeasor who precipitated the accident is liable for *all* of the plaintiff's injuries." (emphasis in original)).

overshadows the original cause[.]"). Here, however, as noted, the record amply establishes the direct and substantial relationship between Petroll's negligent conduct and the deaths of the Harsh family members. *Accord Petroll,* 558 Pa. at 587, 738 A.2d at 1005.

Finally, we are aware of the policy arguments that have been made in favor of the broader use of apportionment in tort cases involving concurrent causation, *see, e.g.,* Frank J. Vandall, *A Critique of the Restatement (Third), Apportionment As It Affects Joint and Several Liability,* 49 EMORY LA. 565 (2000), and of the efforts of the General Assembly in this direction in the form of the attempted restructuring of the Comparative Negligence Act, *see supra* note 19. This case was not selected for review, however, to consider the possibility of a retrospective alteration to the common law and to the prevailing statutory liability scheme in effect as of the trial and entry of judgment in this case, which entail the application of joint and several liability.

█ In summary, although crashworthiness theory establishes a basis to support manufacturer liability for enhanced injury, it does not require that a manufacturer be the exclusive cause of such injury, nor does it diminish the causal link that exists between an initial collision and all resultant harm. Since Petroll's negligence and the automobile design defect discerned by the jury were both determined to have been substantial factors in causing the deaths of the Harsh family members, the trial court did not err in assessing liability jointly and severally.

The order of the Commonwealth Court is affirmed.

Chief Justice CAPPY, Justice CASTILLE and NIGRO, Justice NEWMAN and Justice EAKIN and BAER are with the opinion.