NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1204
_____

TRAVELERS INDEMNITY CO.,
as subrogee of Daniel De Luca and Nelson, Levine,
DeLuca and Horst, LLC,
                                    Appellant

v.

ROBERT M. STENGEL;
KEVIN BERRY;
THE LEDGEWOOD LAW FIRM, P.C.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-08-cv-02583)
District Judge:  Honorable Petrese B. Tucker
_____

Argued January 8, 2013
Before:  RENDELL, FISHER and JORDAN, *Circuit Judges*.

(Filed: January 29, 2013)

Christopher J. Brill (ARGUED)
301 South State Street, Suite N105
Newtown, PA  18940

Peter C. Kennedy (ARGUED)
Gibbons
18th and Arch Streets
1700 Two Logan Square
Philadelphia, PA  19103
        *Counsel for Appellant*

Jeffrey P. Brien
Daniel F. Ryan, III (ARGUED)
Marshall L. Schwartz
O'Brien & Ryan
2250 Hickory Road, Suite 300
Plymouth Meeting, PA 19462
    *Counsel for Appellee, Robert M. Stengel*

Kimberly A. Boyer-Cohen
Arthur W. Lefco (ARGUED)
Marshall, Dennehey, Warner, Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103
    *Counsel for Appellees, Kevin F. Berry*
    *and The Ledgewood Law Firm*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Travelers Indemnity Company appeals from the District Court's grant of summary judgment to Robert M. Stengel, Kevin Berry, and the Ledgewood Law Firm, P.C. For the reasons stated below, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

This case arises out of a zoning dispute. Because they believed that they were wrongly denied the required permits to use their property as they wished, Craig and Mary Jo Sanford sought redress from their Township's Supervisors. Attorney Robert Stengel

2

initially drafted a complaint that alleged, among other things, RICO violations.  The

Sanfords eventually filed that complaint pro se, and they later retained attorney Kevin

Berry to help them continue to assert the RICO claim, despite its dubious grounding in

law and fact.  The complaint that was amended by Berry was dismissed.

Later, the named Supervisors sought damages from the Sanfords under

Pennsylvania's Dragonetti Act, 42 Pa. Cons. Stat. § 8351 et seq., which prohibits

wrongful use of civil proceedings.  Daniel de Luca represented the Sanfords in the

Dragonetti case, which they lost by default because de Luca missed a filing deadline.  A

$3.03 million judgment was entered against the Sanfords, who filed a malpractice claim

against de Luca.  De Luca's malpractice insurance carrier, Travelers, paid $1.5 million to

the Supervisors to settle both the Dragonetti suit and the malpractice claim.[1]  Travelers

then sought contribution under the Uniform Contribution Among Tortfeasors Act

("UCATA"), 42 Pa. Cons. Stat. § 8321 et seq., from the attorneys who had previously

handled the RICO matter.  The District Court granted summary judgment to Berry,

Stengel, and Ledgewood, concluding that Travelers could not seek contribution from

them because they were not joint tortfeasors with de Luca and were not proximate causes

of the Dragonetti judgment.

---

[1] As part of the settlement agreement, Travelers obtained from the Sanfords a release of any liability Berry, Stengel, and Ledgewood might have to them.

3

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332(a)(1), due to diversity of citizenship of the parties. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and, under *Erie v. Tompkins*, 304 U.S. 64 (1938), we apply Pennsylvania state substantive law. "When the state's highest court has not addressed the precise question presented, a federal court must predict how the state's highest court would resolve the issue." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1373 (3d Cir. 1996). Our review of an order granting summary judgment is plenary. *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III.

Travelers seeks contribution for the funds it paid to settle the Sanfords' malpractice claim under the UCATA. As a threshold matter, we must first consider whether the UCATA applies to legal malpractice claims. We then review the District Court's determinations that Stengel, Berry, Ledgewood, and de Luca were not joint tortfeasors and that Stengel, Berry, and Ledgewood's actions were not proximate causes of the Dragonetti judgment against the Sanfords. If either one of those conclusions was correct, Travelers's contribution claim must fail.

4

A.

Stengel, Berry, and Ledgewood argue for the first time on appeal that Travelers's claim must fail because the UCATA's definition of joint tortfeasor – "two or more persons jointly or severally liable in tort for the same injury to persons or property" – cannot apply because the economic harm caused by malpractice does not constitute an "injury to persons or property." 42 Pa. Cons. Stat. § 8322. We consider this issue now because we may affirm for any reason supported by the record. Because the Pennsylvania Supreme Court has not addressed this question, we have examined the available evidence to predict what that court would likely decide. *See Orson*, 79 F.3d at 1373. We conclude that the Pennsylvania Supreme Court would likely hold that the District Court properly applied the UCATA.

Stengel, Berry, and Ledgewood argue that similar language used in other contexts has been held not to extend to economic injury. For example, Pennsylvania's Rule of Civil Procedure regarding delay damages, Pa. R. Civ. P. 238, was held to be explicitly limited by the phrase "bodily injury, death or property damage" and therefore inapplicable to legal malpractice. *Rizzo v. Haines*, 515 A.2d 321, 325 (Pa. Super. Ct. 1986). Similarly, the language "resulting in death or injury to person or property" in the Comparative Negligence Act was not applied to claims for purely monetary losses. *Gorski v. Smith,* 812 A.2d 683, 701 (Pa. Super. Ct. 2003).

Here, we conclude that Appellees have attempted to find ambiguity where there is none. The precise phrasing at issue has been used to refer to non-personal injury

negligence actions in contexts including in the statute of limitations that applies to legal malpractice. 42 Pa. Cons. Stat. § 5524(c)(7). Numerous other courts construing the same language have come to the same conclusion. *See*, *e.g.*, *Cherry Hill Manor Assocs. v. Faugno*, 861 A.2d 123, 129 (N.J. 2004); *Faier v. Ambrose & Cushing, P.C.*, 609 N.E.2d 315, 316 (Ill. 1993); *Maddocks v. Ricker*, 531 N.E.2d 583, 590 (Mass. 1988). For these reasons, we conclude that the UCATA governs here.

B.

To establish a right of contribution, Travelers must show that Berry, Stengel, Ledgewood, and De Luca were joint tortfeasors. Actors are joint tortfeasors under the UCATA if their conduct "causes a single harm which cannot be apportioned . . . even though [the actors] may have acted independently." *Capone v. Donovan*, 480 A.2d 1249, 1251 (Pa. Super. Ct. 1984) (citing Restatement (Second) of Torts § 879 (1977)).

In its effort to clarify this unsettled area of Pennsylvania law, the District Court identified two lines of cases that explain joint tortfeasor status. The first group finds joint liability where tortfeasors caused cumulative harms that resulted in a single, indivisible injury to the plaintiff. In a second group of cases, Pennsylvania courts have not found joint liability where the tortfeasors clearly acted independently and created separable injuries. Because it concluded that this case involved an initial injury caused by Stengel, Berry, and Ledgewood and another later injury caused by de Luca's default, the District Court looked to the second group of cases and applied the factors laid out in *Voyles v. Corwin*, 441 A.2d 381, 383 (Pa. Super. Ct. 1982).

6

Travelers contends that neither Stengel nor Berry has shown a reasonable way in which the liability for the Dragonetti judgment can be apportioned. Because Stengel's decision to draft and Berry's decision to continue the RICO action without adequate factual and legal support put the Sanfords in jeopardy of a Dragonetti action, Travelers urges that the lawyers should be analogized to two drivers who, in succession, each collided with another vehicle and were found to have jointly created a single injury. *See Smith v. Pulcinella*, 656 A.2d 494, 497 (Pa. Super. Ct. 1995).

Travelers also asserts that its claims are distinguishable from medical malpractice cases where the perpetrator of an original injury and a physician who aggravated that injury are not found to be joint tortfeasors. Travelers argues that in those cases the courts made their decisions because they found two separable injuries. *See*, *e.g.*, *Harka v. Nabati*, 487 A.2d 432, 435 (Pa. Super. Ct. 1985). Here, Travelers contends that because the Sanfords did not have a cognizable malpractice claim against Berry and Stengel until the Dragonetti judgment against them was final (i.e., when the Sanfords had incurred damages), the analogous line between initial perpetrator and aggravator cannot be drawn.

We also acknowledge Travelers's argument that the most recent authority binding on our decision, *Harsh v. Petroll,* 887 A.2d 209 (Pa. 2005), places some limitations on the applicability of the *Voyles* multifactor test. The *Harsh* court implied that applying a multifactor test, which helps courts "to determine the propriety of apportionment[,]" would be inappropriate in cases where substantial-factor causation had been established

7

at trial. *Id.* at 214. Here, proximate cause was not established at trial. We therefore reject the assertion that the District Court's application of the *Voyles* factors was error.

We have considered those factors and the question of whether Berry, Stengel, and de Luca created a single, unapportionable harm. We note the differences between the specific duties involved in pursuing RICO liability and in defending clients against a Dragonetti action. Those dissimilarities also mean that different types of evidence would be required to demonstrate that each attorney committed malpractice, particularly because the case against de Luca is so starkly procedural. Additionally, years passed between the actions of Berry and Stengel and the later representation by de Luca. Furthermore, the Dragonetti judgment is not the direct or immediate consequence of Berry or Stengel's representation. Although the Dragonetti *suit* might have been a direct result of their actions, the *judgment* caused by de Luca's default, which cost the Sanfords the right to assert potentially viable defenses, was not. We therefore conclude that the Appellees and de Luca did not cause a single, unapportionable injury. Because Appellees and de Luca were not joint tortfeasors, Travelers has no right to contribution.[2]

## IV.

For the foregoing reasons, we will affirm the order of the District Court.

_____

[2] In order to establish a right to contribution, Travelers must also show that Stengel, Berry, and Ledgewood are liable to the Sanfords for the underlying malpractice claim, which includes the element of proximate cause. *See Bailey v. Tucker*, 621 A.2d 108, 112 (Pa. 1993). The District Court concluded that the failures of the attorneys who preceded de Luca were not proximate causes of the Dragonetti judgment. Because we conclude that the joint tortfeasor requirement was not met, we need not reach this question.

8